2014 VT 44

# James A. Brault and Elise D. Brault v. Jeanne E. Welch

[97 A.3d 914]

No. 13-189

Present: Reiber, C.J., Skoglund and Robinson, JJ., and Tomasi and Morris (Ret.), Supr. JJ., Specially Assigned

Opinion Filed May 16, 2014

*L. Randolph Amis* of *L. Randolph Amis, P.C.*, Burlington, for Plaintiffs-Appellants.

*Liam L. Murphy* and *Damien J. Leonard* of *Murphy Sullivan Kronk*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Plaintiffs James and Elise Brault appeal from the trial court's order granting judgment to defendant Jeanne Welch in this dispute over a right-of-way. The Braults argue that the court should have found an ambiguity in the description of the right-of-way, and that it should have granted their motion to alter or amend. We affirm.

¶ 2. The court made the following findings after a site visit and a bench trial. The parties own homes on Broadlake Road in

Colchester, Vermont. Richard and Diane Griffiths owned both properties prior to 1978. In 1978, the Griffiths conveyed to their son and daughter-in-law the property now owned by the Braults. The deed to their children included a right-of-way to Lake Champlain, described as follows: "Included in this conveyance is a right of way five feet wide leading to the lake along the existing block wall and southerly thereof." The Braults purchased the property in 1996 from the bank after the property went into foreclosure. Their deed included the right-of-way, but the description did not include the phrase "southerly thereof."

¶ 3. In 1981, Welch and her former husband purchased their lot from the senior Griffiths. The deed to the Welches did not refer to the right-of-way. Welch became aware of the deeded right-of-way some time after purchasing the property. In the thirty-one years that she had lived on the property, neither the younger Griffiths nor the Braults ever entered her property to reach the lake along the southerly boundary. Upon occasion, however, Welch did allow them to access the lake across other portions of her property. The court explained that, due to the existence of a seawall consisting of large, irregular blocks of stone, normal access to the water by walking would require a set of stairs at both the east and west sides of the seawall and some type of short walkway across its top.

¶ 4. The court found that Welch's property consists of a small lot on Lake Champlain with a one-story house. The lot is bordered by Broadlake Road on the east and Lake Champlain on the west. To the south is a cement block wall that separated the property from a neighboring lot owned by the Fitzgeralds. The cement block wall has been in place for many years and is the same wall referenced in the 1978 deed. Because neither party had commissioned a survey, it was unknown whether this wall marked the exact southern boundary of the Welch lot. Welch had gardened and planted shrubs and low trees on her side of the wall. The court found that if the five-foot right-of-way described in the Braults' deed was located on the north side of the block wall (Welch's side), it would be a very significant change to the dimensions of her lot and to its privacy.

¶ 5. In 2010, the Braults listed their home for sale. The listing included reference to lake access. A discussion ensued between Welch and the Braults concerning whether there existed a right-of-way and where it might be located. In 2012, the Braults filed

a declaratory judgment action, asking the court to find that they have "the right to access to the lake as described [in their deed] for purposes of pedestrian travel to and from the lake, the necessary improvements, maintenance and construction of seasonal structures on or over [Welch's] property over the top of the bank to the waters of Lake Champlain for actual access to the lake as may be permitted by any regulatory entity with jurisdiction over the matter."

¶ 6. As previously stated, the deed in question purported to convey "a right of way five feet wide leading to the lake along the existing block wall and southerly thereof." The court found this language unambiguous. Its plain meaning was that the right-of-way was located on the south side of the block wall. The court explained that the words "southerly thereof" modified the term right-of-way, and it found this interpretation strongly reinforced by the word "thereof," which meant "of that" or "concerning that." In arguing that the right-of-way had to be located on the northern side of the block wall, the Braults asserted that the words "southerly thereof" modified the words "the existing block wall," that is, the block wall was "southerly" of the right of way. The court found this to be an unreasonable interpretation of the deed language, and one that was inconsistent with how the English language was spoken and read. Read as a whole, in a normal manner, the court found that the phrase "southerly thereof" gave up its meaning without much of a struggle.

¶ 7. The Braults maintained that language in the original deed from the Griffiths to their son and daughter-in-law — "southerly thereof" — must mean that the right-of-way was actually northerly of the block wall, primarily because a location northerly of the wall avoided any encroachment over the property line with the neighboring lot.

¶ 8. ■ The difficulty with the Braults' argument, the court explained, was that it violated the parol evidence rule, citing to *Thomas v. Farrell*, 153 Vt. 12, 16, 568 A.2d 409, 411 (1989). Courts must start with deed language and look to circumstantial evidence about intent only when there is ambiguity. The court found that the question of the circumstances that might have produced the disputed provision in the deed also suffered from a shortage of evidence. Because the exact dimensions of the Welch lot were not established, the court found that it was not known whether the

block wall marked the exact boundary on the south side of the lot. Nor could the court discern what circumstances led to the use of the words "southerly thereof" due to "a shortage of evidence." The court concluded that the Braults failed to meet their burden of proof, and it entered judgment in Welch's favor.

¶ 9. Following this ruling, the Braults asked for an extension of time in which to file a motion to alter or amend, which the court granted. During this period, the Braults had a survey prepared which they included with their motion, asking the court to reopen the evidence. The court found that the survey was neither "newly discovered" nor "previously unavailable" evidence as required by Vermont Rule of Civil Procedure 59. For this and other reasons, the court denied the motion with respect to the survey. The court noted that the survey would not change the outcome of the case in any event. It came as no surprise, the court observed, that the block wall marked the boundary line. At most, the survey demonstrated what everyone involved in the case anticipated — that there was no strip of land south of the block wall that belonged to the Griffiths at the time of the deed to their children. The court found that any alternative theory of deed reformation was never pled and was not part of this case. The court also rejected the Braults' new interpretation of the term "southerly thereof," which, the Braults argued, referred to the direction of the easement, not its location. This appeal followed.

¶ 10. The Braults argue on appeal that the court erred in granting judgment to Welch. They maintain that the court should have found the description of the right-of-way to be ambiguous because it was a simple scrivener's error that misstated which side of the wall the easement is on. According to the Braults, because they established the concrete wall as the property's boundary line, it follows that the easement description was a mere drafting error and that the easement was located on the north and west side of the concrete wall. They complain that the court's interpretation does not give meaning to all of the language in the deed.

¶ 11. ▮ We find no error in the court's decision. See *Main St. Landing, LLC v. Lake St. Ass'n*, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.) (Supreme Court reviews question of whether ambiguity exists de novo). As we have explained:

> Our master rule in construing a deed is that the intent of the parties governs. In ascertaining intent, we must

consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible. A deed term is ambiguous if reasonable people could differ as to its interpretation. If a writing is unambiguous under this standard, we must enforce the terms as written without resort to rules of construction or extrinsic evidence.

*DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotations omitted).

¶ 12. ■ However, the determination of ambiguity may also involve preliminary analysis of the circumstances in which the terms are set. "We allow limited extrinsic evidence of 'circumstances surrounding the making of the agreement' in determining whether the writing is ambiguous." *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999). Other than the obvious agreed upon fact that the original grantors gave an easement to the original owners of the now Brault lot, no evidence was presented concerning the circumstances surrounding that grant. Did the Griffiths think they owned five feet south of the wall? Did they intend the easement to be north of the wall, notwithstanding the language of the deed? The decision of this case is driven by a failure of evidence of key elements on which the Braults rely.

¶ 13. ■ ■ First, the language of the deed is not ambiguous. As the trial court explained, the right-of-way had four important qualities that were described in sequence: it was five feet wide, leading to the lake, along the existing block wall, and southerly of the wall. The court's interpretation is consistent with the normal use of the English language. The interpretation proposed by the Braults is not. Ultimately, the Braults would read the word "southerly" to mean "northerly." This does not comport with the deed's plain language. The fact that the grantor may not have owned the land southerly of the block wall does not render the language at issue ambiguous. In interpreting deeds, the court must start with the language of the deed itself, and ambiguity does not result simply because the plain language leads to an unfavorable or implausible outcome. Because this language is unambiguous, it must be enforced as written.

¶ 14. ■ Even if the circumstances surrounding the grant of the easement created some initial ambiguity as to the language employed,

the "construction" offered by the Braults requires the Court to rewrite, rather than merely construe, the words of the deed. Specifically, it demands that the Court insert the word "northerly" in place of the word "southerly." A result so at odds with the actual language of a deed is rightly accomplished through the remedy of reformation. See *Cassani v. Hale*, 2010 VT 8, ¶¶ 17-19, 187 Vt. 336, 993 A.2d 422 (finding reformation appropriate to determine location of easement in face of ambiguous wording of deed); *LaRock v. Hill*, 131 Vt. 528, 530-31, 310 A.2d 124, 126 (1973) (stating that deed reformation is appropriate where, through mistake, language did "not represent the actual convey-ance intended by the parties"); *Wead v. St. Johnsbury & Lake Champlain R.R.*, 64 Vt. 52, 58, 24 A. 361, 362 (1892) (finding that "[p]arole evidence was admissible, not to vary the deed, but to explain it"); *Pitts v. Brown*, 49 Vt. 86, 89 (1876) (holding that "parol evidence was not admissible to show that by mistake one tract was inserted in a deed instead of another").

¶ 15. ▮ As to any suggestion that the trial court should have reformed the deed in this case, the trial court expressly found that this theory was never pled and that it was not part of this case. Issues not raised in pleadings are waived. See *In re Woodstock Cmty. Trust & Hous. Vt. PRD*, 2012 VT 87, ¶ 21, 192 Vt. 474, 60 A.3d 686. The trial court added, moreover, that to sustain such a claim, the Braults would have had to prove, beyond a reasonable doubt, that there was a valid agreement, prior to the execution of the deed, representing a standard to which the erroneous writing could be reformed so as to express the true transaction between the original parties to the deed. See *Kilcullen v. Dery*, 133 Vt. 140, 142, 334 A.2d 410, 411-12 (1975).

¶ 16. ▮ In their reply brief, the Braults assert that they tried the issue of reformation by implication and consent at trial. Even assuming arguendo that this unpled claim was tried by consent below, the Braults cannot meet the necessary standard of proof. As set forth above, the Braults failed to introduce any evidence regarding the circumstances of the drafting of the 1978 deed that attempted to create the claimed easement. Further, there was no evidence to explain the sellers' understanding of boundary lines. Therefore, there was no basis on which the court could reform the deed. The court found that there was no evidence to show what circumstances led to the use of the words "southerly thereof" in

the deed, and certainly no evidence, beyond a reasonable doubt, of an agreement concerning any easement between the original parties to the deed prior to the deed's execution. We find no basis to reform the deed here.

¶ 17. Finally, the Braults argue that the court erred in denying their motion to alter or amend. They maintain that the court should have either reopened the evidence and allowed their new survey to be admitted into evidence or ordered a new trial. The Braults also assert that the court "added" to its decision after trial by finding that there was no dispute about the location of the property line on the southern side of the property.

¶ 18. ██ ██ The trial court has broad discretion in ruling on motions to alter and amend, and will be reversed only where there has been an abuse of discretion. "Such abuse will be found only when the trial court has entirely withheld its discretion or where the exercise of its discretion was for clearly untenable reasons or to an extent that is clearly untenable." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 132-33, 730 A.2d 1086, 1097 (1999) (quotation omitted). Here, the court did not abuse its discretion. As the court explained, a Rule 59 motion "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." *Rubin v. Sterling Enters., Inc.*, 164 Vt. 582, 588, 674 A.2d 782, 786 (1996). The Braults had ample opportunity to present a survey at trial but they neglected to do so. Their failure to present this evidence at trial is not attributable to any mistake or inadvertence of the court. Additionally, the court did not "add" to its decision, as the Braults posit. It merely observed that, even if the survey was admitted, it would not change the result.

*Affirmed.*