*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

SUPREME COURT DOCKET NO. 2015-209

OCTOBER TERM, 2015

| | | |
|---|---|---|
| William R. Sawyer-Overlake II, LLC | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Gregory Jones and Jessica Jones | } | DOCKET NO. 984-9-13 Cncv |

Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

This case involves a dispute over a fence owned by defendants that allegedly interferes with a storm water drainage easement. Plaintiff appeals from the trial court's summary judgment decision in favor of defendants.[*] We affirm.

Plaintiff sued defendants in September 2013, alleging that it held an easement that crossed defendants' land. According to plaintiff, this easement allowed for storm water drainage across defendants' land to a storm water detention pond located on a common land portion of the subdivision. Plaintiff maintained that defendants, or their predecessor-in-title, constructed a fence around the perimeter of the property subject to the easement, and that the fence blocked access to the storm water detention pond, thereby preventing plaintiff from undertaking maintenance and repair to the detention pond.

Defendants subsequently moved for summary judgment, and plaintiff opposed the motion. Before ruling on the motion, the court issued an entry order asking the parties to indicate if a certain map, "The Overlake Subdivision Stormwater Outfall Upgrade Map," reflected the current location of the drainage pipe and fence. The parties agreed that it did. In addition to answering the court's query, both sides submitted additional facts and materials.

The court granted summary judgment to defendants in January 2015. At the outset of its decision, the court noted that plaintiff's statement of disputed material facts did not comply with Vermont Rule of Civil Procedure 56, and thus, the court considered all facts asserted by defendants to be undisputed as long as they were supported by the record. As to the additional facts and materials submitted in response to the court's entry order, the court found that neither side had submitted an updated statement of material facts and plaintiff had not even submitted an

---

[*] We emphasize that in the future, counsel must include page numbers in the printed case's table of contents. See V.R.A.P. 30(a)(2)(B)(i) (stating that appellant must provide a table of contents that lists the parts of the record included, <u>with references to the page of the printed case at which each part begins</u>).

affidavit authenticating the documents it submitted.  Because the parties failed to comply with Rule 56, the court declined to consider the additional factual materials.

Turning to the merits, the court identified the following undisputed facts.  In December 1999, William R. Sawyer and Dream Builders, Inc., conveyed Lot 28 in the Overlake Subdivision ("the property") to Tammy Babcock, defendants' predecessor-in-interest.  The 1999 deed described the property as that depicted on a plan of land entitled, "Overlake Subdivision, Developers, W.R. Sawyer and Dream Builders, Inc., Milton," which appeared as of record at Map Slide 298, Map 405 of the Town of Milton Land Records.  The deed further provided:

> The within conveyed land is subject to a drainage easement 20 feet in width leading from the cul-de-sac adjacent to said Lot and crossing said Lot to Common Land B as shown on said Plan.  Said easement is for the transmission of storm water discharge to a storm water detention pond located upon Common Land B and runs to the benefit of the Town of Milton, its successors and assigns.

Sawyer expected that the town would take control of the drainage easement, but the town declined to do so.  In October 2006, Sawyer conveyed the rights and title to his remaining land to plaintiff via a quitclaim deed.  In September 2011, Babcock conveyed her property to defendants via a warranty deed which included the language above regarding the drainage easement.

The plan referenced in the deeds in defendants' chain of title, Map Slide 298B, does not show a detention pond, but it does indicate the location of a "20 [foot] easement."  The 298B easement spans from the cul-de-sac to the southernmost boundary line of the property.  A map prepared in June 2013 shows the current location of the drainage pipe, detention pond, and a 20 foot easement encompassing the pipe.  This map shows that the drainage pipe was not installed within the 298B easement.  The actual pipe originates farther west along the cul-de-sac and exits the property along the westernmost boundary line of the property, as opposed to the southernmost.  The fence, which is depicted on the 2013 map, originates at the southwest corner of defendants' house and extends southeast, crossing over the drainage pipe.  The fence does not cross over the 298B easement as the fence turns southwest before doing so.  Plaintiff asserted that the easement depicted on the Map Slide 298B was intended to be a pedestrian right-of-way, but it was never constructed.  Neither warranty deed mentions a pedestrian easement.

The court found both warranty deeds in defendants' chain of title unambiguous.  Both stated that there was a 20 foot drainage easement crossing the property from the cul-de-sac to Common Land B "as shown on said Plan."  The deed also referenced Map 298B.  Because the deed language was clear on its face, the court found no need to look to extrinsic evidence.  Even if the court were to consider Sawyer's statement the easement depicted on Map 298B was for pedestrian access or that the drainage pipe was already installed as depicted on a different map submitted by plaintiff—the Overlake Subdivision Milton Plan/Profile—that evidence contradicted the language of the deeds.  The court determined, based on the undisputed material facts, that the easement depicted on Map Slide 298B was the deeded easement and that the drainage pipe was supposed to be installed within that easement.  The parties agreed on where the drainage pipe and fence were currently located.  Had the drainage pipe been installed within the 298B easement, the fence would not interfere with it.  The court thus concluded that plaintiff could not meet its burden of showing that the fence interfered with a deeded easement, and it granted judgment to defendants.

Plaintiff moved for reconsideration. Plaintiff asserted that if the 1999 Babcock deed was read in light of extrinsic evidence, there was an ambiguity. Plaintiff maintained that the 1999 deed should be read in conjunction with the 2006 deed from Sawyer to plaintiff. While the 1999 deed referenced the map at Map Slide 298, the Sawyer deed referenced the map at Map Slide 358. Plaintiff reiterated its contention that the easement depicted on the 298B map was intended to be a pedestrian easement.

The court denied the motion to reconsider, finding that plaintiff raised this argument for the first time in its motion, and that it should have been raised earlier. Even if this argument had been timely raised, the court stated that it would reach the same conclusion. The court had ruled that there was nothing ambiguous about a deed referencing a recorded plan and stating that there was a drainage easement "as shown on said Plan." There continued to be no reason to look to extrinsic evidence. The court recognized that "limited extrinsic evidence of 'circumstances surrounding the making of the agreement' [can be considered] in determining whether [a] writing is ambiguous." Kipp v. Estate of Chips, 169 Vt. 102, 107 (1999) (citing Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579 (1988)). Extrinsic evidence is only relevant, however, when, in combination with the writing, it supports a different and reasonable interpretation than the one reached on the writing alone. Id. Plaintiff argued that the drainage easement reserved in the 1999 deed was not located "as shown on said Plan" as referenced in the deed, but rather in a completely different location,and that the easement designated on the referenced plan was actually a planned pedestrian right-of-way that was neither reserved through the 1999 deed nor ever constructed. The court found that this was not a reasonable interpretation but rather an attempt to "vary the terms of an unambiguous instrument." Id. The court thus denied plaintiff's motion for reconsideration. This appeal followed.

On appeal, plaintiff reiterates its argument that extrinsic evidence of the circumstances surrounding the 1999 Babcock deed shows that the deed is ambiguous. Plaintiff again argues that the easement shown on the map referred to in the Babcock deed was a pedestrian easement. It maintains that extrinsic evidence shows that the intent of the deed was to locate the easement in accordance with a design plan approved by applicable governmental authorities. Plaintiff contends that it is reasonable to interpret the 1999 deed to hold that the reserved easement was not in fact in the location of the easement shown on the map referenced in the deed. In support of this argument, plaintiff relies on various documents that the trial court expressly refused to consider as they were not filed in compliance with V.R.C.P. 56. We similarly do not consider these materials on review. This includes: a 1998 Stormwater Drainage Permit issued by the State of Vermont; a site plan prepared by an engineer employed by plaintiff's predecessor-in-title; a ruling from the Town of Milton Planning Commission; and an amendment to the declaration of covenants for the subdivision recorded in the town records. Plaintiff also points to the 2006 deed from Sawyer to plaintiff, which referred to a plan that showed a 20 foot easement in a different location than the plan referenced in the Babcock deed.

We review the court's decision de novo, and we find no error. See Brault v. Welch, 2014 VT 44, ¶ 11, 196 Vt. 459 (Supreme Court reviews question of whether ambiguity exists de novo); see also Richart v. Jackson, 171 Vt. 94, 97 (2000) (Supreme Court reviews grant of summary judgment using the same standard as trial court; summary judgment is warranted when there are no disputes of material fact and any party is entitled to judgment as matter of law).

"[I]n interpreting a deed, we look to the language of the written instrument because it is assumed to declare the intent of the parties." Kipp, 169 Vt. at 105. "If a writing is unambiguous . . . , we must enforce the terms as written without resort to rules of construction or extrinsic evidence." Brault v. Welch, 2014 VT 44, ¶ 11 (quotation omitted). "A deed term is

3

ambiguous if reasonable people could differ as to its interpretation." Id. (quotation omitted). Notwithstanding the language above, "the determination of ambiguity may also involve preliminary analysis of the circumstances in which the terms are set." Id. ¶ 12 (citing Kipp, 169 Vt. at 107 ("We allow limited extrinsic evidence of 'circumstances surrounding the making of the agreement' in determining whether the writing is ambiguous.")). Such "evidence is relevant, however, only when, in combination with the writing, it supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable." Kipp, 169 Vt. at 107. As the trial court recognized, extrinsic evidence "may not be used to vary the terms of an unambiguous writing." Id.

We agree with the trial court that the language of the deeds is unambiguous and that the interpretation advanced by plaintiff is not reasonable. The deed describes defendants' property as that depicted on a plan that appeared in the town land records at Map Slide 298. The easement is described as that "shown on said Plan." No other map or plan is referenced in the deed. There is no mention of an easement for pedestrian access. The only reasonable interpretation of this language is that the easement is that depicted, as stated, at Map Slide 298. It does not appear that any of the extrinsic evidence upon which plaintiff now relies was properly submitted below. To the extent that plaintiff relies on maps prepared or approved in connection with various government permits, those maps cannot alter the private property rights of the parties in question. See, e.g., In re Woodstock Cmty. Trust & Housing Vt. PRD, 2012 VT 87, ¶ 40, 192 Vt. 474 ("[T]he Environmental Division does not have jurisdiction to determine private property rights.") (citing Nordlund v. Van Nostrand, 2011 VT 79, ¶ 17, 190 Vt. 188). In any event, we agree with the trial court that plaintiff's proffered interpretation is not reasonable, and that his use of extrinsic evidence would serve only to improperly "vary the terms of an unambiguous writing." Id.

Finally, plaintiff argues that defendants were on "actual and inquiry notice" to investigate the facts surrounding the location of the storm water easement because the location of the pipe was obvious upon ordinary inspection. Plaintiff did not raise this argument in its opposition to summary judgment. Instead, plaintiff raised it for the first time in its response to the court's January 2015 entry order concerning the actual location of the pipe and fence. Plaintiff asserts that defendant cannot "disavow" the physical location of pipe. This argument is beside the point. The allegation raised in plaintiff's complaint, and the question before the court, was whether defendants' fence interfered with a deeded storm water drainage easement. Pursuant to the plain language of the deed, it did not. Thus, summary judgment was properly granted to defendants.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice