Filed 01/25/24

VERMONT SUPERIOR COURT
Grand Isle Unit
PO Box 7
North Hero VT 05474
802-372-8350
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02678

James Weston, et al v. Jeffrey McMahan, et al

## DECISION ON CROSS-MOTIONS FOR PRELIMINARY INJUNCTION

This is a neighborhood dispute concerning the location, scope, and nature of claimed easements. Plaintiff James Weston moved for a preliminary injunction to require Defendants Jeffrey McMahan and Heather Ross "to immediately discontinue their unlawful obstruction and interference of Plaintiff's deeded right of way over the Defendants' property 'for access to Lake Champlain for recreational purposes.' " The remaining Plaintiffs subsequently joined the motion. They were met shortly thereafter with Mr. McMahan and Ms. Ross's cross-motion, seeking a preliminary injunction restricting Plaintiffs to use of the "Original ROW" as depicted on Exhibit 1 to the Complaint, and limiting use of that easement to people lawfully residing on Plaintiffs' properties. The court held a hearing over the course of two days, and invited post-hearing briefing. Having received and reviewed that briefing, the court now grants each motion in part and denies it in part.

The standard for issuance of a preliminary injunction is familiar. It requires that the court consider four factors: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586. The burden "of establishing that the relevant factors call for imposition of a preliminary injunction" falls on the moving party. *Id.* Disputes concerning possession and occupancy of real estate are particularly suited to injunctive relief. In Vermont, landowners have "the right to exclusive possession of [their] land." *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 16, 184 Vt. 207. Denying a landowner this right constitutes irreparable harm. *Evans v. Cote*, 2014 VT 104, ¶ 8, 197 Vt. 523 ("A permanent injunction may be awarded in response to a continuing trespass because damages are inadequate to address the wrong.") In cases involving allegations of continuing trespass, "[d]amages are inadequate relief" because a damages remedy "fails to accord the obstructed party his rightful access" to his property. *Begin v. Barone*, 124 Vt. 421, 422 (1965). Indeed, "Vermont law is clear that even the threat of continuous trespass entitles a party to injunctive relief." *State v. Preseault*, 163 Vt. 38, 43 (1994).

With these standards in mind, the court turns to the facts established at the hearing on these motions. The properties at issue were all part of a farm on the east shore of North Hero owned at one time by Grace and Joseph Ratta. Over time, the Rattas carved off Plaintiffs' properties (and others); with each conveyance, they granted an easement over their retained lands for access to Lake Champlain. Eventually, Joseph Ratta having passed, Grace Ratta conveyed part of the retained lands over which the deeded easements passed to Defendants' predecessor in title.

The deeds out from the Rattas created something of a mish-mash of easements. The first of the deeds out—at least with respect to the properties at issue here—was to Plaintiff Terrence Martin's predecessor in title, on May 1, 1964. That deed conveyed a right of way to the subject lot; it also conveyed

> the right [in common with others] to go from this Lot to Lake Champlain over existing roads and paths on foot or by bicycle for purposes of swimming, boating, fishing and other uses of the Lake and water front.

Notably, the deed nowhere described the location of the "existing roads and paths."

Next, on October 22, 1968, the Rattas conveyed the parcel now owned by Plaintiff Hannah Rose. That deed described the easement to the lake differently:

> Also conveyed is a right of way in common with the Grantees over the Grantors' dirt road situated Northerly of this subject matter lot, for purposes of ingress and egress to and from the portion of the Grantors' beach set off for the use and enjoyment of their Grantees. This area is located approximately three hundred feet from the South-east corner of the Grantors' premises.

Notably, the evidence failed to establish that any part of the beach located on Defendants' property is located "approximately three hundred feet from the South-east corner of [the Rattas'] premises."[1]

Next, on November 1, 1988, the Rattas conveyed the parcel now owned by Mr. Weston. That deed contained yet another description of an easement:

> Also conveyed herewith is an easement 15 feet in width for access to Lake Champlain for recreational purposes and for the installation

---

[1] In defiance of common usage, Plaintiffs argue that "premises" refers to the Rattas' house, while Defendants argue that it refers instead to the underlying real estate. The court need not resort to a dictionary or other secondary source to resolve this dispute. Instead, the deed itself makes clear that by "premises," the Rattas meant not buildings but land. The deed by its express terms conveyed "[a] lot of land with buildings thereon"; the "lot," in turn, is described as "a portion of the premises conveyed to the grantors . . . ." Clearly, then, "premises" can only have meant land. Indeed, each deed subsequent to the original deed out from the Rattas reflects the drafter's interpretation to this effect; the deeds substitute "lands now or formerly of Joseph J. Ratta and Grace J. Ratta" for "the Grantors' premises." This dispute, however, is moot, because Plaintiffs have introduced no evidence that would suggest that any part of Defendants' beach is close to 300 feet from the southeast corner of what was then the Rattas' house; indeed, application of a ruler to the surveys that are in evidence would appear to disprove any such assertion. Equally, while the location of the southeast corner of the Rattas' land in 1968 does not appear, there is no evidence that any part of Defendants' beach is close to 300 feet from any point that the court could conceivably determine to have been that corner.

> and repair of a water line over the adjacent lands or land now or
> formerly of Joseph J. Ratta and Grace M. Ratta, extending from the
> northeast corner of the within conveyed parcel to Lake Champlain.
> Said easement may be extended temporarily to twenty feet in width, if
> necessary, for the travel or parking of construction vehicles or the
> piling of earth and other materials in connection with the installation,
> repair, or replacement of said waterlines.

As far as appears, neither Mr. Weston nor his predecessor in title ever installed a water line. Rather, one of them appears at some indeterminate time to have tied into an existing water line, shown generally as the blue line on Plaintiffs' Exhibit 1. At that time, that line provided water service to all of the houses then in the neighborhood. Twice since that time—once about 15 years ago, in concert with Grace Ratta's son, and hence with her implicit acquiescence, and again in 2022—Mr. Weston has replaced the part of that water line that runs from Lake Champlain to the "pump house" shown on Exhibit 1.

Three years after the conveyance to Mr. Weston's predecessor, on September 11, 1991, the Rattas conveyed the parcel now owned by Messrs. Hayes and Jackson. Again, the deed set forth yet another description of an easement:

> An easement over lands presently owned by Joseph J. Ratta & Grace J. Ratta on a
> designated drive to Lake Champlain for recreational uses and activities.

The location of the "designated drive" is not described. Notably, this deed also conveyed a separate easement for water service:

> An easement and license to attach onto an existing water system
> presently serving lands of the grantors herein and lands of Glenda
> Mashtare.[2] The license to attach onto this system will require grantees to bear
> costs of such connection and share equally in all future costs of maintenance and
> repair for the system.

Finally, on October 3, 2005, Grace Ratta conveyed a larger parcel, from which the McMahan/Ross parcel was later conveyed. This deed recited that the parcel was subject to

> a 50 foot wide right of way in common with others for ingress and egress along
> the south boundary line and to an easement 15 feet in width for access to Lake
> Champlain for recreational purposes and for the installation and repair of
> waterlines over lands now or formerly of Gary M. Ratta and Eleanor Ratta
> (Volume 44, Pages 69-70), John and Ann Sherlock (Volume 40, Pages 186-187),
> Glenda R. and Millard Mashtare (Volume 26, Pages 412-413), Gail McMendes
> (Volume 25, Pages 215-217) and lands now or formerly of Triendle.

While the deeds are unclear as to the location of the various easements described above, the parties seem to agree that at least the easements described in the original deeds out for the Martin and

---

[2] Ms. Mashtare was the then owner of what is now Ms. Rose's parcel.

Rose parcels passed over the driveway to the Rattas' home, and thence southeast to the lake, along what has been called the "green line" on Plaintiffs' Exhibit 1. In 1984, however, a family dinner at the Rattas' home was interrupted by the necessity of moving vehicles in the Ratts' driveway to allow one of the then easement holders access to the lake. Grace Ratta then insisted that her husband relocate the right of way. He and their grandson then did that, establishing a new route along what is shown as the "yellow line" on Exhibit 1.

This route was in existence in 1988 when Grace Ratta conveyed the parcel to Mr. Weston; it runs generally easterly along the northern boundary of that property and turns to the northeast at or near the northeastern corner of that property—as described in Mr. Weston's deed. It appears also to have been in existence in 1991, when Ms. Ratta conveyed the Hayes/Jackson parcel. Thus, the evidence suggests that the "yellow line" is the "designated drive" described in that deed. While the evidence is thin at best, it is a reasonable inference that the then-owners of the Martin and Rose parcels acquiesced in the relocation of the right-of way, and that since that time, all Plaintiffs have used it to access the lake. In 2000, at Ms. Ratta's invitation and request, Mr. Weston improved the drive to the lake, bringing in concrete blocks to stabilize the embankment along the lakefront and laying gravel to harden the way. At least the concrete blocks remain in place and evident to any observer. The condition of the way itself at the time when Mr. McMahan and Ms. Ross purchased their property does not properly appear.

Notably, with the exception of the oblique reference in the deeds in Ms. Rose's chain of title to a poorly defined "portion of the Grantors' beach set off for the use and enjoyment of their Grantees," none of the deeds at issue here even mentions beach rights. Rather, all of the deeds convey rights only to access the lake. There is no evidence that any of Plaintiffs or their predecessors in title used the beach in a manner hostile to the Rattas' ownership rights. Instead, as amply suggested by the Rose deeds, the Rattas allowed their grantees permissive use of the waterfront. While Grace Ratta conveyed out her interest in the waterfront in 2005, there is no evidence that any of the Plaintiffs' use of the waterfront since has been anything other than permissive. Conversely, there is no evidence from which the court could conclude that any such use was open, notorious, or continuous.

On this evidence, Plaintiffs argue that they have a deeded right of way across the Ross/McMahan property to Lake Champlain. While they acknowledge that this right of way originally followed what has been shown as the green line on their Exhibit 1, they argue that it was relocated by acquiescence in 1984, to the yellow line. Their pleadings and argument in this regard are somewhat paradoxical; while asserting that the right of way was moved in 1984, before the conveyances out to

the predecessors of Messrs. Hayes, Jackson, and Weston, they nevertheless assert that those parcels have deeded rights to both the original and relocated easements. They appear to make a similar assertion with respect to the Rose and Martin properties—which if course cannot have deeded access to a right of way that is neither described in their deeds nor even in existence at the time their source deeds were created.

Consideration of the original deeds and the history recited above through a more precise analytical lens reveals the fallacy of Plaintiffs' shotgun approach. The evidence establishes at least a likelihood of proving at trial that the Rose and Martin properties were benefited initially by an easement over the green line shown on Exhibit 1. In 1984, apparently by mutual acquiescence, the Rattas—then owners of the servient estate—relocated the right of way to the yellow line. This effected an abandonment of the original right of way in favor of the relocated access. *See Sargent v. Gagne*, 121 Vt. 1, 12 (1958) ("It is the general rule that a way, once located, cannot be changed thereafter without the mutual consent of the owners of the dominant and servient estates."). Plaintiffs cite no authority—nor could the court find any—for the proposition that such a relocation creates a second right of way, essentially expanding the grant in a deed of a single right of way to two. Rather, the cases all speak of a "relocation" rather than addition.

It bears emphasis, however, that any rights with respect to the relocated right of way do not arise by operation of express grant in a deed. This is critical. The statute of frauds provides that "[e]states or interests in lands, created or conveyed without an instrument in writing shall have the effect of estates at will only." 27 V.S.A. § 302; *see also* 12 V.S.A. § 181(5) ("An action at law shall not be brought" regarding "an interest in or concerning [lands]" "unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith."). While our Supreme Court has yet to opine on the topic, the court finds persuasive cases from other jurisdictions that conclude that modifications of easements by agreement or acquiescence remain subject to the statute of frauds. *See, e.g., Steinbrenner v. Wilson*, 2007 WL 490981, *1 (Court of App. of Kentucky, Feb. 16, 2007) ("Oral agreements for the exchange or relocation of easements are within the Statute of Frauds."); *Concrete Machinery Co., Inc. v. City of Hickory*, 134 N.C. App. 91, 95 (1999) ("oral agreement to relocate would nonetheless be unenforceable because the Statute of Frauds requires that the conveyance of all interests in real property be in writing"); *Whitehead v. Ross*, 2004 WL 1161434, *4 (Ct. of App. of Michigan 2004) ("Because a modification of an easement is therefore a modification of an interest in land required by

the statute of frauds to be in writing, the modification must also be in writing."). In short, neither Ms. Rose nor Mr. Martin has shown a right at law to use of the yellow line.

This does not end the inquiry; it means only that any right either Ms. Rose or Mr. Martin may have to use of the yellow line must be found in equity. The doctrine of relocation by acquiescence arises in equity, and may be enforced in equity. The doctrine has its roots in estoppel; the owner of the servient estate is estopped from reneging on earlier acquiescence to the relocation. *See Sweezey v. Neal*, 2006 VT 38, ¶ 10, 179 Vt. 507 ("If the actions of the dominant estate's owner indicate acquiescence to an easement's changed location, the dominant estate is equitably estopped from claiming an entitlement to the former location."). Such an estoppel, however, cannot operate against a stranger to the actions or omissions that give rise to it. Instead, the question is whether that stranger may be estopped by virtue of her or his own acts or omissions.

Here, the doctrine of inquiry notice comes into play.

> The principle of inquiry notice is a venerable one in Vermont. We have explained the concept as follows:
>> [T]he courts of equity are vigilant . . . to see that [a] purchaser shall not be allowed to take any benefit resulting from any want of care and watchfulness. If there exist any circumstance of suspicion, whereby he might be said to be fairly put upon his guard, and he neglects to follow out the inquiry, he is affected with notice of all facts, which such inquiry would have brought to his knowledge, and if he purchases with his eyes shut, he acquires only the title of his grantor impeded with its attendant equity.

*Richart v. Jackson*, 171 Vt. 94, 97 (2000) (quoting *Hart v. Farmers' & Mechanics' Bank*, 33 Vt. 252, 264–65 (1860)). In *Richart*, the Court affirmed the trial court's ruling that the plaintiffs had the right to use and maintain a shed and dock on a common beach area on the defendant's property. The defendant's deed made reference to an easement to access and use a designated beach area, but made no reference to construction, maintenance, or use of the shed or dock; that was covered by a separate declaration, which was not recorded until after the defendant's purchase of the property. The Court noted that

> [t]he uncontroverted facts supported the court's finding that the dock was in use at the time of defendants' purchase, and this finding supported the conclusion that defendants were on inquiry notice of plaintiffs' interest. [Citation omitted.] A diligent inquiry, in turn, would have readily revealed the existence of the Declaration, which was discovered and disclosed in defendants' own title insurance report. Accordingly, it is immaterial whether, as defendants claim, the Declaration was technically outside their chain of title, as defendants were not bona fide purchasers without notice.

*Id.* at 98.

Similar analysis here supports the conclusion that Mr. McMahan and Ms. Ross may not have been bona fide purchasers with respect to Ms. Rose and Mr. Martin's rights to use the yellow line. They had notice—or ought to have had—that Mr. Weston's easement followed the yellow line. In this regard, they make three arguments. First, they argue that just as the drafters of some of the deeds in Ms. Rose's chain of title used "southwest" when they clearly meant "southeast," Mr. Weston's source deed's reference to his "northeast" corner clearly must have meant "northwest." Relatedly, they argue that his source deed's reference to a single easement for access and water line must have been a reference to the green line, where for at least part of its length, the original right of way and water line followed the same general path. Finally, they argue that there was nothing on the ground to put them on inquiry notice that the original right of way may have been moved. The first two of these arguments do not withstand close scrutiny, and the third proves immaterial.

First, the suggestion that the reference in Mr. Weston's chain of title to the "northeast corner" of his parcel must have been a mistake ignores the fundamental rule that construction of a deed begins with its plain language. *See Brault v. Welch*, 2014 VT 44, ¶ 8, 196 Vt. 459 ("Courts must start with deed language and look to circumstantial evidence about intent only when there is ambiguity."). Here, there is no ambiguity. The deed clearly describes an easement that begins at a clearly defined, and easily located point—the northeast corner of what is now the Weston parcel, marked by an iron pipe.

The ambiguity, Mr. McMahan and Ms. Ross assert, lies in the conflict between the reference to Mr. Weston's northeast corner and the reference to the water line, which they say is located at or near his northwest corner. This argument suffers from a failure to pay closer attention to the language of the deed. Mr. McMahan and Ms. Ross note, correctly, that the source deed conveys a single easement for both access and water line. From this they observe, again correctly, that the water line that serves Mr. Weston's property generally follows the green line. They then conclude that the deed's reference to a single easement must then mean that the right of access also follows that line; hence, "northeast" must mean "northwest."

What this argument conveniently overlooks is that Mr. Weston's easement is for "installation" of a water line. The evidence, however, makes clear that Mr. Weston never installed a water line; instead, he connected to an existing line. By what right he did so does not appear; perhaps Ms. Ratta allowed him to do by permission what she subsequently allowed Mr. Martin's predecessor to do as a matter of right. In any event, that is immaterial, as there is no dispute here regarding Mr. Weston's right to attach to that water line. What is material is that the location of the line to which he *attached* does not and cannot define the location of the line he is entitled to *install*. In short, closer attention to

the deed and the evidence makes clear that Mr. Weston does in fact have a single easement, along the yellow line, and that he simply has not exercised one of the rights that easement grants him.[3]

This conclusion renders immaterial Mr. McMahan and Ms. Ross's suggestion that (unlike in *Richart*) there was nothing on the ground that would have put them on inquiry notice as to the claims of others to a right to pass over the yellow line for lake access. The only competent evidence on this point came from Mr. McMahan; while Plaintiffs' counsel introduced aerial photographs that suggested use of the yellow line as a path of vehicular access to the lake, he (inexplicably) failed to establish that the photograph depicted conditions as they were when Mr. McMahan and Ms. Ross were visiting the property with an eye to purchasing it. Thus, Plaintiffs have failed to show a likelihood of success on any argument that the condition of the premises put Mr. McMahan and Ms. Ross on inquiry notice of any claim to use of the yellow line. Fortunately, at least for Ms. Rose and Messrs. Hayes and Jackson, they need not succeed on that argument. The clear description of a right of way following the yellow line and the obvious inconsistency between that description and the apparently undisputed location of the "original" right of way ought to have moved any reasonably inquisitive person to inquire as to the status of the original right of way. And the evidence makes clear that such inquiry would have disclosed that it was not simply Mr. Weston who claimed a right to use the yellow line for access to the lake. In short, the evidence establishes at least a likelihood of success on Ms. Rose and Messrs. Hayes and Jackson's claims that their equitable rights to use of the yellow line are enforceable against Mr. McMahan and Ms. Ross.

The foregoing conclusions, however, obtain only with respect to the several Plaintiffs' claims to use of the yellow line for access to the lake. Examination of the various deeds makes clear that none of them grants the right to do anything on the McMahan/Ross property beyond accessing the lake for recreational purposes. "The touchstone for interpreting the scope of an express easement is the intent of the original parties to the easement." *VTRE Investments, LLC v. MontChilly, Inc.*, 2020 VT 77, ¶ 23, 213 Vt. 175. In determining such intent, courts first "look to the language of the written instrument because it is assumed to declare the intent of the parties." *Kipp v. Chips Est.*, 169 Vt. 102, 105 (1999). "[W]hen looking at particular language in a deed, the court must accept the plain meaning of the

---

[3] Moreover, even if Mr. McMahan and Ms. Ross's assertion that there is an ambiguity in the deed were correct, that would not yield the result for which they argue. They ask the court, under the guise of construction, not to construe but to rewrite the original deed out from the Rattas to Mr. Weston's predecessor. This the court cannot do. "A result so at odds with the actual language of a deed is rightly accomplished through the remedy of reformation." *Brault*, 2014 VT 44, ¶ 14. As in *Brault*, however, they have not pleaded reformation. *Id.* ¶ 15. Had they done so, their effort would almost surely fail. To maintain an action for reformation, they would have to prove, beyond a reasonable doubt, "that there existed, previously to the deed, a valid agreement representing a standard to which the erroneous writing may be reformed, so as to express the true transaction between the parties." *Kilcullen v. Dery*, 133 Vt. 140, 142 (1975). The evidence adduced at the preliminary injunction hearing makes clear that this would be a well-nigh impossible hill to climb.

language . . . ." *Id.* at 107. Here, the plain language conveys a right of access—nothing more nor less—and then only in the 15-foot area of the waterfront where the easement ends.

Nor have Plaintiffs established any likelihood of success on their claim that they enjoy prescriptive rights to use any other part of the waterfront for any purpose. Instead, the unrebutted evidence compels the conclusion that any use that any of Plaintiffs or their predecessors may have made of the waterfront beyond the scope of the deeded easement was permissive. Clearly, Mr. McMahan and Ms. Ross revoked any such permission, as was their right.

In short, the evidence establishes that neither deeded nor prescriptive rights vested in any of Plaintiffs to do anything other than access the lake, using the yellow line, and remaining at all times within the 15-foot limit of the easement. Importantly, given the evidence of at least some of Plaintiffs' recent use of the lakefront, it does not permit the erection of any structures, such as a dock or storage shed; it also does not allow the parking of vehicles or trailers, or the leaving of kayaks, chairs, or any other recreational paraphernalia anywhere on the Ross/McMahan property. Once on the lake, of course, they have the same right as any other person to use the lake itself. Their use of the waterfront, however, is limited to access to the lake in the 15-foot area at the end of the yellow line, except as may otherwise be allowed by littoral property owners, including Mr. McMahan and Ms. Ross.[4]

These conclusions take into account both the public interest and the potential harm to the respective parties arising out of the issuance of the injunction that follows. The public interest is clearly served by the delineation of clear rights to the use of private property, particularly where that property abuts a public resource such as Lake Champlain; it is also served by the de-escalation of behaviors, on the part of at least some of Plaintiffs and their guests, that invite breaches of the peace. The law does not and cannot condone such behaviors, and clarifying rights to prevent them in the future, is clearly in the public interest. Equally, there can be no harm in requiring parties to respect each other's well-established rights. In short, consideration of all of the factors listed at the outset of this decision compels the conclusion that both sides of this case are entitled to an injunction delineating and enforcing the clear, deeded rights each enjoys.

---

[4] The court does not reach the question of whether and to what extent the easement allows any of Plaintiffs to invite guests to traverse the right of way with them. It should go without saying—but events in evidence suggest the wisdom of stating what should have been obvious—that to the extent that Plaintiffs may enjoy any right to include guests, that right must be tempered by the well-established principle that the owner of a dominant estate may not overburden the servient estate. *See Rowe v. Lavanway*, 2006 VT 47, ¶ 22, 180 Vt. 505 ("[A] servient estate must use a right-of-way in a manner consistent with the use contemplated at the time of its creation, and it may not use it in a way that materially increases the burden on the servient estate."). Clearly, allowing guests to wander along the beach, sit in Ms. Ross and Mr. McMahan's chairs, and even walk up onto their deck—all as shown on photographs in evidence—is an egregious violation of this principle.

## ORDER

The court grants both motions in part, and denies both in part. Mr. McMahan and Ms. Ross are enjoined from interfering in any way with Plaintiffs' use of the 15-foot corridor that follows the yellow line, as called out in Mr. Weston's chain of title, for recreational access to the lake. Plaintiffs are enjoined from any use of Mr. McMahan and Ms. Ross's property beyond that 15-foot corridor.[5] They are further enjoined from any use of the yellow line right of way other than for recreational access to the lake. While they may traverse the yellow line for such purpose, they may not park or store anything anywhere on the McMahan/Ross property—even within the right of way—without Mr. McMahan and Ms. Ross's express permission.

Electronically signed pursuant to V.R.E.F. 9(d): 1/24/2024 7:39 PM

_____
Samuel Hoar, Jr.
Superior Court Judge

---

[5] The court notes that as depicted on Exhibit 1, the yellow line has two termini, on either side of a rock jetty that protrudes into the lake just north of the northwest corner of the Ross/McMahan parcel. The evidence does not allow the court to conclude which of these is the actual terminus of the right of way. Obviously, Plaintiffs are entitled to only one point of access; where that point lies remains for later resolution. The court would note only that to the extent that either side in this case asserts that such point is the one north of the jetty, the owner of that land may become a necessary party.

Decision on Cross-Motions for Preliminary Injunction
23-CV-02678 James Weston, et al v. Jeffrey McMahan, et al
Page **10** of **10**