Filed 01/29/26

VERMONT SUPERIOR COURT

Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-00731

| Christopher Luce et al v. Matthew Pierson et al |
| --- |

## DECISION AND ORDER

Plaintiffs Christiopher Luce and Linda Bonnett brought this case against their next-door neighbors, Defendants Matthew and Jamie Pierson, following disagreements over an easement. Trial took place on January 26, 2026. By that time, the Piersons had sold their property, waived their prior jury demand, and withdrawn all but one counterclaim (IV) for intentional infliction of emotional distress. Plaintiffs maintained their four original requests for (1) removal[1] of the permanent structure (septic mound) from the appurtenant easement; (2) repair and pay for damages to driveway/correct culvert installation and underground cable; (3) reimburse Plaintiffs for driveway maintenance costs and snow plowing/enforce lien on the property; and (4) pay emotional distress damages as deemed appropriate by the court.[2] All parties represented themselves.

## I. Findings of Fact

The court makes the following findings of fact by a preponderance of the credible evidence admitted at trial, focusing on the matters most relevant to the claims tried.

The following map excerpt of Thetford depicts in dashed line the easement which forms the focus of this case. Plaintiffs own what the map shows as lot 5. Defendants (until January 15, 2026) owned what the map shows as lot 6:

---

[1] At trial, Plaintiffs moved to amend their complaint to add damages resulting from Defendants' allegedly improper location of the septic mound within the easement. The court denied that motion as untimely. Later in trial, Plaintiffs stated they believe that the location of the septic mound may damage them in a future sale and requested $25,000 from Defendants to waive any claim regarding its location.

[2] (Ex. 42.)



Ex. 1 (excerpt)

The easement provides access from the Plaintiffs' lot 5, across Defendants' former lot 6 to Latham Road at the bottom (eastern) edge of this map. One solid line depicts the property boundary between lots 4 and 6 and forms the center line of the "approximately" 50-foot wide easement. Once on Plaintiffs' lot 5, the easement becomes a circle with a 50-foot radius.

The following map shows a different vantage of the properties involved in this case. The map below depicts Plaintiffs' named property (lot 5 above), Defendants' named former property (lot 6 above), the easement that became known as Makalas Way (dashed lines) and adds a dotted-line depicting the "toe of the septic system" and "mound septic system" involved in Plaintiffs' Count 1:



Ex. 110 (excerpt and red circles added)

Defendants admit that, as depicted by the dotted-line above, "part of the septic mound is constructed within the 'approximately 50' wide' easement, but not within the traveled portion of that easement."[3] The dashed-line closest to the solid property boundary between the Reiss property and Defendants' former property represents the dirt and gravel portion of the easement denoted as "driveway." The areas between the dashed lines and the dotted-dashed lines depict grass shoulders on either side of the driveway. The distance between the dotted-dashed lines (across the farthest edges of the grass shoulders) is "approximately" 50 feet, with the property boundary between the Reiss property and Defendants' former property forming the easement's midline.

The parties agree on the description of Plaintiffs' easement across Defendants' former property:

---

[3] (Ex. 43, at 16 (Resp. to Req. to Admit #1).)

3

```
        Together with a right of way approximately 50' wide
leading westerly from Latham Road to the aforementioned
parcel and parcel #3.  Said right of way is approximately
25' wide northerly of the northerly boundary of lot #4 and
25' wide southerly of the northerly boundary of lot #4.
Said right of way is to be used in common for all the usual
purposes with the grantors, their heirs and assigns and the
grantees, their heirs and assigns for ingress, egress and
regress and to share equally in construction and maintenance
thereof.
```

<u>Ex. 5</u>

Since at least 1977, the predecessors in Plaintiffs' chain of title have used consistent language to describe this "approximately 50' wide" "right of way" "for ingress, egress and regress and to share equally in construction and maintenance thereof."[4]  Defendants agree that this easement burdened their former property.

The parties agree that, during 2022–2024, Plaintiffs incurred costs to maintain Makalas Way for which Defendants have not yet reimbursed their share: (a) $1,000 for snow plowing, (b) $1,300 for repair of a culvert and (c) $300 for other materials to repair various damages.[5]

During that same time period, each party claims harassment from the other, resulting in damages for emotional distress.  Defendants cite Plaintiffs' behavior as causing them to sell their property and move.  They closed on the sale on January 15, 2026, after trying to sell for three years and seven prior attempted sales lost, in their minds, because of Plaintiffs' behavior.  Plaintiffs offered a photo that Defendants took of him mowing the grass shoulder next to the driveway.[6]  Plaintiff Luce also described needing to see a licensed psychiatrist for several months for which he incurred unspecified costs due to the stress he attributes to Defendants.

## II. <u>Conclusions of Law</u>

### A.  Removal of Septic Mound (Plaintiffs' Count 1)

The court lost jurisdiction over Count 1 when the Piersons sold the property involved in this case.[7]  For this court to have jurisdiction over a case, the plaintiff must demonstrate standing. *Bischoff v. Bletz*, 183 Vt. 235, 242 (2008).  "To establish standing, a plaintiff 'must

---

[4] (*See also* Defs.' Answ. and Counterclaims ¶¶ 6–16; Ex.'s. 2–6 (providing consistent descriptions).)

[5] (*See* Ex.'s 31, 36, 38, 56, 73,74, 102, 103, 112, 117.)

[6] (Ex. 39)

[7] At trial, Plaintiffs objected that trial took place both too soon and too late.  The court had a statewide two-hour delayed opening due to a snowstorm.  At the start of trial, Plaintiffs moved to continue.  Defendants objected because they already taken off work for the day.  The court deferred ruling on the motion and commenced trial.  When Defendants ceded most of their time, the court offered Plaintiffs the two hours of the trial day still remaining.  Plaintiffs declined.  The court overruled their objection to trial proceeding today.  Plaintiffs objected at that point to the trial coming too late because it followed Defendants' property sale, prejudicing Plaintiffs, in their view.

show (1) injury in fact, (2) causation, and (3) redressability.'" *In re Acorn Energy Solar 2, LLC*, 2021 VT 3, ¶ 53 (citation omitted). "In other words, 'the plaintiff must allege a personal injury traceable to the defendant's conduct that the court can remedy by granting the sought-after relief.'" *Id.* (citation omitted).

Plaintiffs' evidence on (1) and (2) do nothing to change their inability to establish (3). Assuming that the (1) the septic mound's incursion into the untraveled portion of the "approximately" 50-foot easement constituted as a matter of law a sufficient injury in fact and (2) that the Piersons caused it, this court cannot remedy the situation by granting Plaintiffs their sought-after relief of ordering the Piersons to move something they no longer own.[8] Plaintiffs have not demonstrated standing necessary for this court to have jurisdiction over Count 1.

Lacking jurisdiction, the court dismisses Plaintiffs' Count 1.

## B. Easement Maintenance/Repair Costs (Plaintiffs' Counts 2-3)

Interpreting a deed starts with harmonizing all of a deed's language as the best indication of the parties' intent. *Brault v. Welch*, 2014 VT 44, ¶ 11 (citing *DeGraff v. Burnett*, 2007 VT 95, ¶ 20). "Only after finding reasonable people could differ as to an instrument's interpretation do we consider evidence outside the instrument's four corners." *Beldock v. Town of Charlotte*, 2010 VT 74, ¶ 10 (citing *DeGraff*, 2007 VT 95, ¶ 20).

The court agrees with the parties that Plaintiffs' deed requires shared easement maintenance costs between the Plaintiffs and Defendants. Plaintiffs' deed unambiguously states that the parties "share equally in . . . maintenance thereof." The parties also agree that Defendants' share of $2,600 remains owing to Plaintiffs. The court now orders Defendants to pay Plaintiffs that $2,600.

## C. Intentional Infliction of Emotional Distress (Plaintiffs' Count 4, Defendants' Counterclaim 4)

"Vermont recognizes the tort of intentional infliction of emotional distress. To prevail, plaintiff must demonstrate 'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" *Crump v. P & C Food Markets, Inc.*, 154 Vt. 284, 296 (1990) (citation omitted). "To satisfy the IIED standard, "[p]laintiff[] bear[s] 'a heavy burden that requires . . . show[ing] that the [defendant's] conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable.'" *Marshall v. Nat'l Bank of Middlebury*, No. 5:19-CV-246, 2021 WL 6803284, at *11 (D. Vt. Dec. 3, 2021) (quoting *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265).

---

[8] The court would likely also lack the ability to issue Plaintiffs declaratory relief even if they had claimed it, which they did not. *E.g.*, *Griffith v. Neilsen*, 141 Vt. 423, 427 (1982) (reversing trial court's determination of town road where town had not joined action).

"The plaintiff must demonstrate 'legal harm resulting from inflicted distress so severe that no reasonable person could be expected to endure it.'" *Id.* (quoting *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57 (1994)). Under this explicitly objective standard, "[w]hether the alleged conduct was so extreme that a trier of fact could find liability is a threshold question of law." *Carroll v. Tropical Aquaculture Prods., Inc.*, No. 1:08-CV-138, 2009 WL 385430, at *5 (D. Vt. Feb. 13, 2009) (citing *Denton v. Chittenden Bank,* 163 Vt. 62, 66 (1994)).

"Liability for IIED cannot be grounded in 'mere insults, indignities, threats annoyances, petty oppressions, or other trivialities.'" *Id*. (citation omitted). *See also id*. (noting that prima facie case requires proving "1) extreme and outrageous conduct; 2) done intentionally or with reckless disregard of the probability of causing emotional distress; 3) resulting in the suffering of extreme emotional distress; and 4) the extreme emotional distress must be actually or proximately caused by the outrageous conduct") (citation omitted).

Plaintiffs' evidence fails to prove their IIED claim.[9] The only specific evidence they have offered comes from a photo taken by Defendants of Plaintiff Luce riding his lawn tractor on the grass shoulder next to the traveled portion of the easement. To the court, the photo appears no different than what a commonplace doorbell camera could have captured. The court finds nothing objectively outrageous about the photo as a matter of law.

Defendants likewise have failed to meet their burden to prove their IIED claim against Plaintiffs. Defendants have generally cited their decision to sell and leave their property as due to Plaintiffs' actions. They effectively conceded at trial they have no proof Plaintiffs caused that outcome. On this record, the court concludes that Defendants have failed to meet their burden to prove their IIED claim as a matter of law.

---

[9] The court treats Plaintiffs' claim for emotional distress as IIED because none of their evidence supports a claim for negligent infliction of emotional distress by Defendants.

### III. Order

For the reasons set forth above, the court will enter separate judgment for Plaintiffs in the amount of $2,600 plus their fling fees under Rule 54(d) of $297.31.

The court dismisses as moot Plaintiffs' Motion for Corrections with Certificate of Service (Mot. 12) and Motion for Corrections of Defendant's Witness List (Mot. 13).

As to findings:

_____
Joyce E. McKeeman
Assistant Judge

Electronically signed pursuant to V.R.E.F. 9(d) on January 29, 2026.

Colin Owyang
Superior Court Judge