### George J. Holden, Jr. et al v. Emanuele Pilini et al

[ 200 A.2d 272 ]

February Term, 1964

Present: **Holden, C. J., Shangraw, Barney and Smith, JJ. and Daley, Supr. J.**

Opinion Filed April 7, 1964

*Downs & Rachlin* for the plaintiffs.

*Richard E. Davis* for the defendants.

**Barney, J.** The parties are adjoining landowners who share the use of a common driveway. Their titles derive from a common grantor, who sold off a lot to the defendants in 1933. As grantor he included the following reservation in that deed:

There is excepted and reserved unto the grantor, his heirs and assigns, full and free right and liberty at all times hereafter, in common with all other persons who may hereafter have the like right, to use a strip of land twelve feet in width on Northfield Street and running back to a point off the northerly side of the land hereby conveyed running from Northfield Street easterly together with the right to use a strip of land adjoining the land hereby conveyed of varying width up to twelve feet in width, said strip running from the back to a point toward Northfield Street, said two strips in part adjoining each other, and together constituting in varying widths of each parcel a perpetual right of way twelve feet in width in the general location now travelled from Northfield Street a distance of approximately 213.3 feet to be used in common by the grantor, his heirs and assigns, at all times, and for all purposes and similarly by the grantees their heirs and assigns, for all purposes to and from Northfield Street over and across said right of way connected with the use and occupation of the said grantor's and grantee's other lands and houses adjoining the same, meaning hereby to designate such right of way in the locations travelled, including also the circular right of way on the land hereby conveyed, and it is agreed that said right of way may be changed to another location on the land hereby conveyed

provided the grantees, their heirs and assigns provide a right of way on their own land which is reasonably convenient for the grantor, his heirs and assigns.

On the ground the right of way is represented by a driveway running easterly from Northfield Street straight to a point where a left branch diverges at a slight angle to approach and pass alongside the plaintiffs' house. The other branch continues straight ahead until it becomes the approach to the defendants' double garage, where it swings sharply left in a half circle to connect with the left branch again. There is a more or less tear-shaped island formed by the course of the driveway as it first divides and then rejoins at the circular portion. A raised stone walk borders the easterly edge of the curved or circular portion joining the northerly and southerly divisions of the driveway.

The right of way is located, for the most part, on the property conveyed to the defendants. The tear-shaped center island is entirely inside the boundaries of the defendants' property. The line between the two properties parallels the plaintiffs' house on its southerly side at a distance of approximately twelve feet, running to the rear to a point some 213.3 feet from Northfield Street, where it turns northerly at about right angles and parallels the rear of plaintiffs' home at about twelve feet distant. This means that the home of the plaintiffs is bordered on the east and south, at an interval of about twelve feet, by the land of the defendants.

Over the years the defendants have improved the portion of the driveway on their land by widening and levelling and installing stone paving and curbing. For about twenty years there has been a walk area set out at the easterly border of the circular drive which it was possible for cars to drive over, until it was reduced in width and raised in height by the use of stone paving some ten or fifteen years ago. There was testimony from one of the defendants that changes were made in the stone walk because the former walk had been worn down by people passing over it with a car. In 1960 the defendants extended the garage portion of their home six and one-half feet westerly. This reduced the driveway area at its easterly end, where it forms the entrance to the defendants' garage, by just that six and one-half feet.

The chancellor found that the stone walk interfered with the plaintiffs' access to their garage, and that the extension of the defendants'

garage restricted the free use of the driveway by the plaintiffs. When this extension was built in 1960, the defendants, according to the findings, represented that they would reduce the size of the island by an equivalent six and one-half feet, so that the plaintiffs would not be handicapped in using the driveway. The chancellor's decree ordered the defendants to make this six and one-half foot reduction in the island. He further ordered that they remove the stone walk or reduce it to the level of the driveway, and ordered the plaintiffs to cease obstructing the driveway by leaving vehicles parked on it. The defendants have appealed from those portions of the order requiring them to make changes in the island and the stone walk.

The defendants claim that the evidence does not support the chancellor's findings that the stone walk and the garage extension are encroachments on the right of way. They say, first, that the deed calls for a width of only twelve feet of right of way, and that the evidence is clear that, in the area where the chancellor has ordered changes, it is already much wider than that at all points. This, they say, establishes that the area now occupied by the garage extension was never within the limits of the right of way described in the deed. Second, they say the testimony shows that a stone walk has been in the same location for about twenty years, marking the easterly limits of travel on the right of way. Therefore, the defendants contend, since the findings cannot be supported in these particulars, the provisions of the decree which depend upon them must also fail.

The defendants arrive at the limits of the right of way from the twelve-foot figure used in the description previously quoted. This description, they say, so defines the limits of the reservation that considerations of convenience, reasonableness or accessibility, authorized under *Lafleur* v. *Zelenko,* 101 Vt. 64, 70, 141 Atl. 603, are not available here. Therefore, they argue, with the right of way already more than twelve feet wide in the area of the defendants' garage and walk, the chancellor's findings on that issue are incorrect as a matter of law.

An exact reading of the description reveals that it carefully describes a twelve-foot right of way leaving Northfield Street on the defendants' land, crossing the plaintiffs' property line at an angle so as to pass along the southerly side of the plaintiffs' house, and continuing straight on to the back line of the property 213.3 feet from the street. This right of way is limited to a total width of twelve feet,

and its position further identified by the locations travelled at the time the deed was given to the defendants in 1933. It is a grant to the defendants of the right to use, in common with the grantors, those parts of this particularized right of way that were on the premises he retained.

The circular portion of the right of way is wholly on land the grantor conveyed to the defendants. His rights in it are by way of reservation, not grant. Its position is also designated as being in the locations travelled, but no measurements defining its dimensions with respect to the grantor are given, unless the twelve-foot limitation set out in the grant is to be brought over and read into this reservation. That this should be done is by no means altogether clear, but this question need not be resolved in this litigation. The deed gives the defendants the right to change the location of the right of way on their land, provided the new location meets the test of reasonable convenience.

The right of way on the southerly and easterly sides of the island, within the bounds of the defendants' property, is an undefined one, at least as to location, except as it may have been located by use. *Scott* v. *Leonard,* 119 Vt. 86, 98-99, 119 A.2d 691. This practical location, defined by use when the deed was given, and for a long time thereafter, becomes the description of the grant, not to be defeated by a showing of a different way or mode of enjoyment of equal convenience. *Lafleur* v. *Zelenko, supra,* 101 Vt. 64, 71. There was evidence that joint use of the driveway had extended to the area directly in front of the defendants' garage doors in their old location.

From this the chancellor found that the garage addition impinged upon the established right of way. To counteract the subtraction of six and one-half feet in this area, he ordered that the easterly end of the island be reduced by six and one-half feet. No matter how wide an opportunity to travel adjacent to this area was created, the location of the original area of travel defined the plaintiffs' rights. Encroachment brought into play the defendants' duty to provide a right of way on their own land "reasonably convenient for the grantor, his heirs and assigns." Since the parties finally failed to agree upon the location of such a right of way, it became the duty of the chancellor to designate a way reasonable as to both parties in view of all the circumstances, in a manner that would not unreasonably interfere

with the enjoyment of the servient estate of the defendants, or overstep the limits of the reservation. *Stevens* v. *MacRae,* 97 Vt. 76, 81, 122 Atl. 892. Not only the language of this deed, but also the law, requires that the dimensions of this new way be reasonable, taking into account its purpose. *Addison County* v. *Blackmer,* 101 Vt. 384, 388, 143 Atl. 700. This requirement of reasonableness, brought into play by the acts of the defendants, becomes now the limit of the reservation, outweighing any application of a twelve-foot limitation, even if this were the limit of the original way.

There was evidence to support the chancellor's finding that the defendants, at the time of building their garage extension, agreed to cut back the island on its easterly end a sufficient distance to compensate for the land used for the addition. His finding that, on this basis, the plaintiffs made no objection to the construction, is also supported by the evidence. On these facts, the chancellor had the right to conclude that this solution satisfied the test of reasonableness as far as both parties were concerned. This portion of the decree is sustained.

The new garage entrance was constructed in 1960. The plaintiffs acquired the adjoining property in 1956. The stone walk was already in existence at that time, and that walk, or something like it, had been there some years previously. Although it undoubtedly restricted the plaintiffs' access to their garage, and although there was evidence that the original easterly line of the circular right of way may have been to the east of the walk, this was not enough to support the part of the decree ordering the walk changed.

The predecessors in title of the plaintiffs had the right to accede to changes made by the defendants. Their consent binds their successors. There is no evidence of any unresolved dispute of this kind existing at the time the plaintiffs took title. Without evidence or finding to the contrary, it must be taken that the location of this walk was a matter previously settled, not susceptible to reopening against the defendants by a subsequent purchaser. The portion of the decree ordering an alteration in the walk cannot stand.

*Decree reversed in those particulars relating to the lowering or removal of the stone walk, and affirmed in all other aspects. Cause remanded for amendment of the decree in accordance with the views expressed in the opinion.*