NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 22

No. 21-AP-206

| | |
|---|---|
| Cindy Sanville | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Town of Albany | January Term, 2022 |

Mary Miles Teachout, J.

William L. Durrell of Bookchin & Durrell, P.C., Montpelier, for Cross-Claim Plaintiff-Appellee
  Buchanan.

Claudine C. Safar and Christian S. Chorba of Monaghan Safar Ducham PLLC, Burlington, for
  Cross-Claim Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Grearson, Supr. J. (Ret.),
         Specially Assigned


¶ 1.    **CARROLL, J.**   The Town of Albany appeals from an order granting summary judgment to a surviving relative of the grantors who had quitclaimed undeveloped property to the Town subject to certain conditions. The civil division found that the deed was ambiguous, considered extrinsic evidence to discern the grantors' intent, and concluded that a logging operation overseen by the Town violated the deed. We conclude that the deed is unambiguous and the logging was not a violation. Accordingly, we reverse and remand.

¶ 2.    The following facts are undisputed. Brothers Bruce Buchanan and R.O. Buchanan each held a one-half interest in a forty-acre parcel of land near Hartwell Pond (the parcel) in the

Town. Both were involved in 4-H during their lives.[1] Bruce Buchanan served as the Southern Regional Director of 4-H Vermont and ran Camp Waubanong, a 4-H camp in southern Vermont. R.O. Buchanan was a professor at University of Vermont and led the Green Mountain Club's Long Trail Patrol. After Bruce Buchanan's death, his one-half interest was conveyed to his widow, Emma Buchanan. In April 1955, Emma Buchanan and R.O. Buchanan conveyed the parcel to the Town by quitclaim deed. The relevant language provides:

> It is expressly understood and agreed, that in the event the grantee shall use or suffer the use of said lands for any other purpose than as a memorial 4-H forest for use by young people in particular, and for 4-H recreational and forestry purposes, this conveyance shall thereupon become void and the title to said premises on demand shall revert to the grantors, their successors and assigns, and they shall have the right to re-enter and repossess themselves of the same.

¶ 3. From 1955 to 2018, the Town did not use the land for any purpose. In January 2018, the Town's selectboard decided to develop the parcel as a public recreation area. The plan included a parking area, a trail to Hartwell Pond, and other infrastructure consistent with recreational use. In August 2018, the Town selectboard hired a logger to harvest sections of the parcel, including clearcutting a portion of an eleven-acre softwood tree plantation, as part of the recreation development project. The logging began in October 2018.

¶ 4. Cindy Sanville also owns land on Hartwell Pond. Sanville filed a complaint against the Town in October 2018 seeking a declaration regarding the ownership of the parcel and a preliminary injunction to stop the logging. She argued that the deed language quoted above contains a reversionary clause, meaning the parcel would automatically revert to the grantors' successors in interest if the Town "use[d] or suffered the use of said lands for any other purpose" than those expressed in the deed. Sanville contended that the logging operation violated the deed,

---

[1] 4-H is a non-profit organization dedicated to outdoor recreational activities including hiking, camping, fishing, swimming, archery, education, and forest management.

which triggered the reversionary clause. As a result, according to Sanville, the parcel automatically reverted to the grantors' successors in interest.

¶ 5. In November 2018, the civil division ordered Ralph Buchanan, a relative of the grantors, joined to the case as an indispensable party under Vermont Rule of Civil Procedure 19. In the same order, the court granted a preliminary injunction to stop the logging. By that point, approximately ten acres had been clearcut. Pursuant to the contract with the logger, the Town received $32,547.23, and placed those funds into an escrow account for use in further developing the property as a public recreation area.

¶ 6. In February 2019, Buchanan filed a cross claim against the Town, arguing that under the plain terms of the deed the parcel reverted to him when the logging began. Thereafter, he moved for partial summary judgment. He maintained that the deed was ambiguous regarding what ownership interests it created. Buchanan pointed to language he alleged created a determinable fee, and other clauses allegedly creating a fee simple subject to condition subsequent.[2] He contended that by applying a rule of construction favoring earlier over later clauses in ambiguous deed passages, the court should conclude that the deed created a determinable fee with a possibility of reverter. Consequently, he continued, the parcel either automatically reverted to him when the Town left the parcel unused or when it began to log the parcel.

---

[2] The fee simple subject to condition subsequent and the determinable fee are similar estates. Collette v. Town of Charlotte, 114 Vt. 357, 360, 45 A.2d 203, 205 (1946) ("A fee upon condition resembles a determinable fee in that it exhausts the whole estate."). However, the future interests retained by the grantors under the estates are different. Grantors retain a right of reentry on a fee upon condition, and a possibility of reverter on a determinable fee. See id. ("The only practical distinction between a right of reentry for breach of condition subsequent and a possibility of reverter on a determinable fee is that the in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once on the occurrence of the event by which it is limited.").

¶ 7. The Town cross-moved for summary judgment, arguing that the plain language of the deed created a fee subject to condition subsequent. The Town contended that the logging was not a condition subsequent because it was necessary to develop the infrastructure required to service recreational purposes, and that clearcutting was a valid logging method. During a September 2019 hearing on the motions, the court found the deed ambiguous regarding the type of estate the deed created and ordered the parties to produce extrinsic evidence to clarify the grantors' intent.

¶ 8. The civil division granted summary judgment to Buchanan. It first concluded that the deed created a fee subject to condition subsequent, with the grantors retaining a right of entry. It reasoned that deed language such as " 'this conveyance shall thereupon become void and the title to said premises <u>on demand</u> shall revert to the Grantors, and they shall have the <u>right to re-enter and repossess</u> themselves of the same' " indicated the grantors' "clear intent" to create a right of reentry. The court concluded that this interpretation was "consistent with the fact that the property was a 40 acre undeveloped parcel of land suitable for forestry," and that while there was a "forest existing on the property at the time of the deed," there was no "4-H recreational and forestry use at the time." It determined that it did not make sense to create a determinable fee because "most likely [development for 4-H purposes] would take a period of time" to implement.

¶ 9. The court then held that the logging constituted a condition subsequent because it "was unrelated to 4-H forestry activities[,] . . . had no connection with any 4-H forestry activities[,] and was done by the Town for its own purposes." The court opined that the deed's "emphasis on use exclusively for defined 4-H people and purposes is unmistakable." The order did not expressly state that the court was also analyzing whether the logging violated the deed under an ambiguous standard; however, it found that Buchanan's extrinsic evidence "emphasiz[ed]" that the "exclusive purpose was not implemented by the Town" when it logged the parcel. It found that the grantors had been "actively involved in 4-H summer camps," that their "intent was that any forestry

4

activities would be as part of a 4-H program involving young people in forestry activities," and the ultimate "goal was the establishment of a 4-H summer camp," "with the forest itself being a memorial related to 4-H." The court held that the Town's nonuse of the parcel "probably would have supported a claimed violation" but no Buchanan heir exercised their right of reentry. Buchanan exercised his right of reentry regarding the logging violation, the court concluded, when he filed his February 2019 cross-claim against the Town.

¶ 10. The Town filed a motion to reconsider, agreeing that the deed was ambiguous as to whether it prohibited the logging, but arguing that the weight of the extrinsic evidence regarding the grantors' intent showed that, in fact, no violation had occurred. The court denied the Town's motion to reconsider and granted its motion for interlocutory appeal on the single question of whether the logging violated the deed.

¶ 11. On appeal, the Town insists that the civil division's conclusion that the deed establishes an "unmistakable" emphasis on exclusive 4-H uses was incorrect because the deed unambiguously contemplates uses by the general public in addition to 4-H. The Town argues that the word "and" in "memorial 4-H forest for use by young people in particular, <u>and</u> for 4-H recreational and forestry purposes" indicates that the grantors intended the parcel to be used either as a memorial 4-H forest or for 4-H recreational and forestry purposes. (emphasis added). It submits that the phrase "for use by young people in particular" provides further evidence of the grantors' intention for nonexclusive use of the parcel. The Town cites dictionary definitions of "memorial" and "forest" to argue that the logging did not violate the plain terms of the deed. It asserts that the extrinsic evidence regarding the grantors' intent "is even stronger than the language of the deed," and points to the grantors' various outdoor recreational commitments as evidence that they intended nonexclusive use of the parcel. The Town finally contends that its future development plans for the parcel do not violate the deed.

5

¶ 12.     Buchanan counters that the logging was not "in memory of 4-H," and was instead "designed to provide funding to develop the parcel as a campground and recreational area open to the public," which constituted a violation.  He also renews his argument that the deed created a determinable fee rather than a fee subject to condition subsequent and the parcel automatically reverted to him once the logging began.  In the alternative, he insists that nonuse by the Town constituted an independent violation which caused the parcel to revert to him.  He argues that much of the Town's extrinsic evidence was inadmissible because the Town did not offer expert-witness testimony in support as required by Vermont Rule of Evidence 702.  He finally contends that the Town did not preserve several aspects of its argument for appeal.

¶ 13.     "We review a grant of summary judgment de novo, using the same standard as the superior court."  Tillson v. Lane, 2015 VT 121, ¶ 7, 200 Vt. 534, 133 A.3d 832.  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' "  Alpine Haven Prop. Owners' Ass'n v. Deptula, 2020 VT 88, ¶ 22, __Vt. __, 245 A.3d 1245 (quoting V.R.C.P. 56(a)).  When both parties move for summary judgment, both are "entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion [is] being judged."  Bixler v. Bullard, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001).

¶ 14.     The sole question on appeal is whether the logging was a condition subsequent that violated the deed.  "Our master rule in construing a deed is that the intent of the parties governs."  DeGraff v. Burnett, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted).  To this end, "we look to the language of the written instrument because it is assumed to declare the intent of the parties."  Kipp v. Est. of Chips, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999).  We "consider the deed as a whole and give effect to every part," striving to give the writing a "consistent, harmonious meaning, if possible."  DeGraff, 2007 VT 95, ¶ 20 (quotation omitted).  Whenever possible, we avoid "unnecessarily invit[ing] speculation beyond the four corners of the document."

6

In re Est. of Holbrook, 2016 VT 13, ¶ 30, 201 Vt. 254, 40 A.3d 788. If a deed is unambiguous, our inquiry ends, and we "enforce the terms as written without resort to rules of construction or extrinsic evidence." DeGraff, 2007 VT 95, ¶ 20 (quotation omitted).

¶ 15. The determination of whether a deed provision is ambiguous is a question of law that we review de novo. Id. ¶ 21. "We allow limited extrinsic evidence of 'circumstances surrounding the making of the agreement' in determining whether the writing is ambiguous." Kipp, 169 Vt. at 107, 732 A.2d at 131 (quoting Isbrandsten v. No. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84 (1988)). "This evidence is relevant, however, only when, in combination with the writing, it supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable." Id. Ultimately, "[a] deed term is ambiguous if reasonable people could differ as to its interpretation." Brault v. Welch, 2014 VT 44, ¶ 11, 196 Vt. 459, 97 A.3d 914 (quotation omitted). Only after exhausting all relevant construction aids to resolve an ambiguity does "the proper interpretation become[] a question of fact, to be determined on all relevant evidence." Kipp, 169 Vt. at 107, 732 A.2d at 131. With these standards in mind, we turn first to the disputed deed language.

¶ 16. The relevant provision provides:

> It is expressly understood and agreed, that in the event the Grantee shall use or suffer the use of said lands for any other purpose than as a memorial 4-H forest for use by young people in particular, and for 4-H recreational and forestry purposes, this conveyance shall thereupon become void and the title to said premises on demand shall revert to the grantors, their successors and assigns, and they shall have the right to re-enter and repossess themselves of the same.

The civil division reasoned that the Town's logging was not a use related to one of the purposes in the deed because the deed's "sole purpose" was to provide for exclusive use by "4-H people and purposes . . . so that young people in 4-H would have a forest dedicated exclusively for their use for 4-H activities." However, this reasoning brings speculation into the deed from "beyond the four corners of the document." Est. of Holbrook, 2016 VT 13, ¶ 30. The civil division

7

unnecessarily restricted the deed to exclusive 4-H activities when nothing on the face of the document required this interpretation. Instead, when we consider the deed "as a whole and give effect to every part," the deed unambiguously does not prohibit the Town's logging. DeGraff, 2007 VT 95, ¶ 20.

¶ 17. While the absence of terms in a deed is not necessarily decisive, it can be instructive to determine the drafters' intent. See Isbrandsten, 150 Vt. at 581, 556 A.2d at 85 (holding that absent express agreement in deed permitting owner to rent property to third-parties, deed unambiguously prohibited owner from doing so); see also deNeergaard v. Dillingham, 123 Vt. 327, 330-31, 187 A.2d 494, 497 (1963) (explaining that where deed contained no reference to springs, burden was on party seeking to reform deed "beyond the intent of the parties as revealed by the deed itself" to produce evidence "from sources outside the language of the instrument" proving preexisting agreement regarding springs). The words "logging" and "clearcutting" and related terms such as "timber harvesting" do not appear in the deed. The word "exclusive" does not appear in the deed. We can find no phrase or combination of phrases indicating that the grantors intended to prohibit the logging, or intended the parcel to be set aside for exclusive use by 4-H.

¶ 18. The deed language, "a memorial 4-H forest for use by young people in particular, and for 4-H recreational and forestry purposes" does not mean the parcel must exist "so that young people in 4-H would have a forest dedicated exclusively for their use for 4-H activities, and specifically for recreational and forestry activities" as the civil division concluded. First, "particular" is not synonymous with "exclusive." Compare Particular, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/particular [https://perma.cc/4BW4-EJ2N] (defining "particular" as "of, relating to, or being a single person or thing") with Exclusive, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/exclusive [https://perma.cc/4EJ5-P3JW] (defining "exclusive" as "limiting or limited to possession, control,

or use by a single individual or group"); see also Davidson v. Vuaghn, 114 Vt. 243, 247, 44 A.2d 144, 146 (1945) (using dictionary to support holding that deed provision was unambiguous).

¶ 19.    Second, the court has interpreted the entire instrument in light of a single clause. Aiken v. Clark, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952) ("The primary rule of interpretation is to gather the intention of the parties from their words by reading not simply a single clause of the instrument, but the entire context."). In effect, the civil division removed the "shall use or suffer the use" term relating to the Town, inserted an exclusivity requirement where none was before, and reduced the deed's multiple purposes to the "sole purpose" of exclusively permitting young people to use a memorial 4-H forest for forestry and recreational purposes. See Madowitz v. Woods at Killington Owners' Ass'n, 2010 VT 37, ¶ 17, 188 Vt. 197, 6 A.3d 1117 ("[W]e will not inject ambiguity into otherwise unambiguous provisions.").

¶ 20.    In contrast, what is apparent from this language is that uses, whatever they may be, must relate to the purpose of a memorial 4-H forest for use by young people in particular, and for 4-H recreational and forestry purposes. While the disputed language provides that young people in particular are to use a memorial 4-H forest, it does not prohibit others from doing so. It does not further define what a memorial 4-H forest is nor what constitutes 4-H recreation and forestry, nor even what constitutes "young people." However, even if the purposes are "susceptible of two or more meanings," this fact alone "does not necessarily make the meaning of the sentence in which [they] appear[] ambiguous or doubtful." In re Robinson's Will, 101 Vt. 464, 467, 144 A.2d 457, 458 (1929). Remaining within "the four corners of the document," we conclude that it is clear that logging is at least one use related to forests and to 4-H recreational and forestry activities. Est. of Holbrook, 2016 VT 13, ¶ 30. Indeed, logging appears to be so closely related to these purposes, the absence of an express prohibition on logging in the deed is striking. See Isbrandsten, 150 Vt. at 581, 556 A.2d at 85.

9

¶ 21. Finally, the grantors could have conveyed the parcel to a 4-H organization or included more stringent language limiting use. See DeGraff, 2007 VT 95, ¶ 20 ("[W]e must consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." (quotation omitted)). The Town is subject to certain constraints when managing real property that private entities are not, and nothing in the deed suggests the grantors intended to alter the Town's authority. See, e.g., Vt. Home Mortg. Credit Agency v. Montpelier Nat. Bank, 128 Vt. 272, 274, 262 A.2d 445, 447 (1970) ("[T]he power of the Legislature to raise and appropriate public funds is limited to public uses."). Moreover, Buchanan does not dispute that the parcel was unused for more than sixty years, and that the parcel was heavily forested. He concedes that the Town had an obligation to maintain the property. To fulfill this obligation, the Town authorized the logging only after consulting the Orleans County forester, who recommended harvesting the parcel to maintain its long-term viability. In sum, we do not think that "reasonable people could differ" on the question of whether the logging violated the deed—it did not. Brault, 2014 VT 44, ¶ 11 (quotation omitted). Accordingly, we enforce the terms of the deed as written because they are "assumed to declare the intent of the parties." Kipp, 169 Vt. at 105, 732 A.2d at 129; DeGraff, 2007 VT 95, ¶ 20 (explaining that when deed is unambiguous, "we must enforce the terms as written without resort to rules of construction or extrinsic evidence" (quotation omitted)).

¶ 22. Because we conclude that the logging did not violate the unambiguous provisions of the deed, we need not, and do not, address the Town's arguments relating to extrinsic evidence and ambiguity. We also do not reach the Town's argument concerning whether its future plans for the parcel violate the deed because our review on interlocutory appeal is strictly limited to the question certified for appeal. See State v. Hayes, 2019 VT 44, ¶ 12, 210 Vt. 417, 215 A.3d 1094 (per curiam) ("Because interlocutory appeals are an exception to the finality requirement, the

10

criteria for interlocutory review are designed to assure ripeness of issues for appellate review, and safeguard against improvident appellate decisionmaking." (quotation omitted)); V.R.A.P. 5(a).

¶ 23. We do not address Buchanan's argument that the deed created a determinable fee and not a fee subject to condition subsequent because he did not file a cross-appeal. See Huddleston v. U. of Vt., 168 Vt. 249, 255-56, 719 A.2d 415, 419 (1998) ("An appellee seeking to challenge aspects of a trial court's decision must file a timely cross-appeal, unless, of course, the party was content with the final order below, leaving it nothing to appeal." (citation omitted)). We do not address his argument that nonuse by the Town constituted a violation for the same reason we do not reach the Town's arguments concerning its future plans. See Hayes, 2019 VT 44, ¶ 12. Finally, in light of our conclusion that the deed is unambiguous, we do not address his two remaining arguments regarding the Town's alleged evidentiary and preservation issues, aside from one aspect. Buchanan asserts that the Town did not preserve its argument comparing the definitions of "particular," which appears in the deed, and "exclusive," which the civil division used to conclude that the logging violated the deed. However, deed interpretation is a question of law that we review de novo, and we do not depend on the Town's argument to independently interpret this deed. See Highridge Condo. Owners Ass'n v. Killington/Pico Ski Resort Partners, LLC, 2014 VT 120, ¶ 10, 198 Vt. 44, 111 A.3d 427 (explaining interpretation of deed is question of law that we review de novo); Viall v. Hurley, 94 Vt. 410, 414, 111 A. 395, 498 (1920) ("The construction of . . . deeds . . . and their legal effect is a question of law . . . .").

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

11