Filed 10/25/24



VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-02711

Chittenden Resorts, LLC dba Mountain Top Inn & Resorts et al v. John Gerlach et al

## FINDINGS AND ORDER

This is a declaratory judgment action brought by plaintiff Chittenden Resorts, LLC against Defendants Debra and John Gerlach. Plaintiffs seeks a preliminary injunction regarding the use and maintenance of cross-country ski trails located on property owned by the Gerlachs. The court held a hearing on plaintiff's motion on September 17, 2024. Plaintiffs were represented by Attorney Christopher Roy and Defendants were represented by Attorney William Meub.[1] For the reasons explained below, Plaintiffs' motion for a preliminary injunction is GRANTED IN PART and DENIED IN PART.

### Findings of Fact

Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact by a preponderance of the evidence. Chittenden Resorts, LLC operates Mountain Top Inn & Resorts ("Mountain Top") located in Chittenden, Vermont. Mountain Top operates sixty kilometers of cross-country ski trails. These trails are located on property owned by Mountain Top, on property owned by other private individuals, and on land in the National Forest. The trails are utilized by guests and invitees of Mountain Top for hiking and equestrian activities in the summer and cross-country skiing in the winter. Mountain Top receives between 5,000 and 7,000 skier visits annually and between 1,200 and 1,500 equestrian visits annually.

Mountain Top maintains the trail system for both its summer and winter purposes. Mountain Top had adopted the guidelines required to operate in the National Forest for the entire trail system. Annual maintenance includes clearing any trees that have fallen across the trails, rock removal, monitoring and maintaining water bars, mowing, and ensuring proper signage is posted along the trails. During the winter, Mountain Top grooms the trails for cross-country skiing. They use a combination of snowmobiles and PistenBully grooming machines. The largest machine Mountain Top utilizes for trail maintenance is twelve and one-half feet wide and they have been using similarly sized machines since 1995.

On or about January 31, 2018, the Gerlachs bought property in the Town of Chittenden from Stanley Fishkin and Nancy Marshall. Plf. Ex. 1. This land was previously owned by Mountain Top's predecessor until the 1990s and is subject to certain easements. The Warranty Deed states the property is subject to trail easements set forth in a 1995 Warranty Deed, admitted as Plaintiff's Exhibit 8, and a 1996

---

[1] At the hearing, plaintiff requested the court do a site visit of the property. Because the court can reach a decision on plaintiff's motion without the need for a site visit, plaintiff's request is denied.

Supplemental Warranty Deed, admitted as Plaintiff's Exhibit 3. Plf. Ex. 1. The trail easements in the 1996 Supplemental Warranty Deed are noted as follows:

> Also conveyed herewith to the Grantee, its successors and assigns, and their guests and invitees, is a 30 foot wide easement over, upon, across and along trails defined herein for the purposes of hiking, cross-country skiing and horseback riding on other lands of Grantor located northerly of and contiguous to the above-described property. Such trails are to be used in common with the Grantor, its successors and assigns, and may be relocated at Grantor's sole election, so long as substantially similar access continues to be provided to Grantee, its successors and assigns. All costs of relocating any portion of such trails shall be borne by the Grantor, its successors and assigns. Included herewith are rights to maintain the trails (including pruning tree limbs and cutting brush, and grooming trails in the wintertime). The trails shall not be used for the passage of motorized vehicles, except to the extent necessary in connection with relocation or maintenance of the trails.

Plf. Ex. 3, p. 17. The deed goes on to describe the trail locations and identifies the trails as Lower Trail and Upper Trail. *Id.* at pp. 17-18. The Lower trail includes the Trail 3 of Mountain Top's trail system, named the Interfield Trail and Trail 16, named Deer Run. At the same time the Gerlachs bought their property, the parties signed a Quit Claim Deed, admitted as Defense Exhibit C. This purpose of the Quit Claim Deed was "to release and terminate any trail easements" other than the trails identified in the 1996 Supplemental Warranty Deed. Def. Ex. C. The court cannot determine based upon the evidence presented at the hearing whether the location of the Interfield Trail is within 30 feet of the Gerlach's property line.[2]

The Interfield Trail is a 2.5-kilometer beginner trail, marked with a green circle. Plf. Ex. 2. The Deer Run trail is a 2.5-kilometer trail that is more difficult, marked with a blue square. *Id.* The Interfield Trail is designed to open for skiing with minimal snow on the ground and is one of Mountain Top's most popular trail. It provides the only access point for the Lost Horizon trail. In December 2021, Mountain Top learned that the Gerlachs were planning to relocate the Interfield Trail. Roger Hill, Mountain Top's Manager of Activities, had a conversation with an employee or subcontractor of the Gerlachs and learned that individual had been hired to flag out where the new trail would be laid out. The Gerlachs did not reach out to Mountain Top to discuss where they planned to relocate the trails.

On June 4, 2024, the Gerlachs sent a notice to Mountain Top informing them that they had relocated the Interfield Trail and the Deer Run Trail. Plf. Ex. 5. Mr. Hill was able to observe the newly laid trail ("the relocated trail") as marked out in Plaintiff's Exhibit 5. The relocated trail's width varies between 8 and 12 feet. There are turns on the relocated trail that do not allow for proper visibility. In addition, at points, the trail is not wide enough for two skiers to pass safely. The relocated trail contains abrupt terrain changes and has extremely steep inclines. Mountain Top would not be able to utilize their grooming equipment on the relocated trail because it is too narrow.

John Morton has been in the trail design business for thirty-four years. Mr. Morton primarily designs cross-country ski trails but has also designed some mountain bike and equestrian trails. Mr. Morton evaluated the relocated trail for safety and design on behalf of Mountain Top. Mr. Morton looked at a variety of factors, including the relocated trail's width, length, and gradient. The replacement trail has three times the gradient of the existing trail. The replacement trail has a gradient between 10% and 20% as

---

[2] The maps attached to Exhibit 5 explicitly state the document was not a boundary survey. As this was the most accurate depiction of the existing and replacement trail, the court cannot conclude how close the existing trails are to the boundary lines.

opposed to 6% on the old trail. Due to the steep gradient, the replacement trail would not be approved for an Olympic race. Mr. Morton also determined the design of the replacement trail would be difficult to manage erosion. When designing a trail, one tries to remove the volume of water produced while minimizing the velocity of the water. Straight, steep trails, such as the replacement trail, are problematic for water management and can lead to erosion. The replacement trail would be difficult or impossible to cross country ski, especially for beginners.

After the Gerlachs sent their notice on June 4, 2024, they installed 6x6 pressure treated posts with no trespassing signs and a gate to prevent access to the Interfield Trail. Since that time, the Gerlachs have prevented Mountain Top from accessing the Interfield and Deer Run trails.

Khele Sparks is the general manager for Mountain Top. Mr. Sparks credibly testified that not having access to the Interfield and Deer Run Trails would have a significant adverse impact on Mountain Top. The replacement of Mountain Top's primary beginner trail with a highly advanced trail raises safety concerns for Mountain Top's guests. In addition, it would have an impact on Mountain Top's business as Interfield is the first trail of the season to be opened. The majority of the guests that come to Mountain Top utilize the trail system and the majority have never cross-country skied or ridden horseback. There is no easy way to quantify the impact not having access to the Interfield and Deer Run Trails would have on the business, however it would be substantial.

## Analysis

The issuance of a preliminary injunction is governed by V.R.C.P. 65. In analyzing Rule 65, the Vermont Supreme Court has explained:

> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Incorporated.,* 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). In each instance, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quotation omitted). The movant bears the burden of establishing that the relevant factors call for imposition of a preliminary injunction. *Id.* at 20, 129 S.Ct. 365. The trial court here rightly identified the main factors guiding its review under Vermont law: (1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest. *Taylor v. Town of Cabot,* 2017 VT 92, ¶19, 205 Vt. 586, 596; *In re J.G.,* 160 Vt. 255 n.2."

*Taylor v. Town of Cabot,* 2017 VT 92, ¶19, 205 Vt. 586, 596; *In re J.G.,* 160 Vt. 255 n.2. The balancing test articulated by the Vermont Supreme Court is designed to be "sufficiently flexible to allow for a preliminary injunction in cases in which the court cannot definitively conclude that the movant is likely to prevail on the merits, but the balance of other factors tips strongly in favor of an injunction." *Id.* at n.3.

Plaintiffs bear the burden of establishing all relevant factors for the imposition of a preliminary injunction. *Id.* at ¶ 19. Each factor will be discussed below.

*The Threat of Irreparable Harm to the Movant*

To establish irreparable harm, the plaintiff "must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari,* 295 F.3d 206, 214 (2nd Cir. 2002) (citations and

quotations omitted).  Furthermore, the plaintiff must show that the harm is "actual and imminent, not remote or speculative." *Id.*   When "it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief" the request for a preliminary injunction will ordinarily be denied. *Taylor,* 2017 VT 92, ¶ 40.

Plaintiff alleges they would suffer irreparable harm if they are forced to continue to use the relocated trails instead of the Interfield Trail and the Deer Run Trail.  The replacement trials made by the Defendants raise serious safety concerns for guests, cut off access to other trails patronized by guests, are too narrow for grooming equipment, and present problems for erosion control in the area.

In determining whether adequate monetary compensation exists, the court must look at the specific harm in the case.  Here, the concern is the unique nature of cross-country ski trails.  In discussing the unique nature of land, the Supreme Court of Washington points out, "[a] specific tract of land has long been regarded as unique and impossible of duplication by the use of any amount of money' . . . The rationale underpinning this rule is not only that land is unique but also difficult to value" (parentheses omitted). *Crafts v. Pitts*, 162 P.3d 382, 387 (Wash. 2007) (quoting *Carpenter v. Folkerts*, 627 P.2d 559, 561 (1981)).  Although *Crafts* concerned the sale of land, the premise remains the same.  It is difficult to value the use of one piece of land over another piece of land.  The inability to quantify or recover monetary damages constitutes an essential component of irreparable injury. As noted by the Fourth Circuit in *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197 (4th Cir. 2019), "here, [where] monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019); see also *Hope Ranch Park Homes Association v. Mariposa Land Development Company*, No. B158821, 2003 WL 1711291, at *4 (Cal. Ct. App. Apr. 1, 2003). Courts have consistently recognized that environmental injury constitutes a type of irreparable harm. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent."); see also *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (rejecting Forest Service assertion that members of conservation group could enjoy other areas of the Beaverhead-Deerlodge National Forest apart from area affected by agency project for outdoor activity, and thus were not irreparably harmed).

Additionally, irreparable harm may be shown through a business's loss of clients, their referrals, and harm to a business's reputation.  "Irreparable injury may be shown through . . . permanent loss of revenues from . . . clients, and loss of referral business usually garnered from clients. Loss of goodwill associated with a business, which is difficult to quantify, can constitute irreparable injury even if . . . injunctive relief, [is] requested." *Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S.2d 504, 507 (2003) (citations omitted); see also *Destiny USA Holdings, LLC v. Citigroup Global Markets Realty Corporation*, 889 N.Y.S.2d 793, 802 (2009).

There are sections of the replacement trails that are between 8 and 12 feet wide, which is narrower than the 30 feet required by the easement. There are places where the trail is not wide enough for two skiers to pass abreast, visibility is poor, and certain portions are too narrow to accommodate the grooming equipment Mountain Top has historically used. In addition, the abrupt terrain changes and sharp increase in gradient on the replacement trail, from 6% to between 10% and 20%, portend difficulties for patrons and heightened probability of environmental damage from flooding.  The replacement trails are vastly different from the Interfield Trail and the Deer Run Trail.  This will directly impact Mountain Top's ability to entice guests to stay at the resort and tack advantage of their cross-country skiing services.   There is no

easy way to quantify the impact of the relocated trails due to the unique nature of the land and the potential loss of business.

Mountain Top has met the threshold for demonstrating irreparable injury. Given the safety concerns to guests (many of whom are novice skiers), inability to perform routine maintenance, potential environmental problems, and the reputational damage to the resort's business and loss of clientele that would inevitably result, Plaintiff has established a substantial risk of irreparable harm if a preliminary injunction is not granted.

*The Potential Harm to Other Parties*

As noted above, the United States' Supreme Court in *Winter* directed courts to "balance competing claims . . . and . . . consider the effect on each party of granting or withholding the requested relief." *Winter*, 555 U.S. at 24; *Taylor,* 2017 VT 92, ¶ 19.

The Gerlachs claim they relocated the portions of the easement to "get some of the trails further away from the area that they actively use and live as well as move a section of an existing trail from areas they want to log . . . ." Opposition, p. 5. They assert that an injunction would violate both their rights under the easement and their right to privacy. *Id.* at p. 2.

Were the court to grant a preliminary injunction, Defendants would be temporarily prevented from logging unspecified areas on their property and the resulting economic returns. Further, Defendants claim privacy violations could result, although the court makes no ruling on the merits of that claim at this time. The Gerlachs do not claim that guests of Mountain Top have blazed new trails onto their property. Instead, they assert that patrons of the resort violate their right to privacy under the easement when those patrons use the existing trail system as it has been defined since 1996, a trail system that the Gerlachs were aware of when they purchased the property in 2018. There is no evidence the same concerns would not still be present with the relocated trails. Given these facts, the court finds the potential risk of harm to the Defendants is low.

*Likelihood of Success on the Merits*

To show a likelihood of success on the merits, a movant "must show more than a mere possibility of success." *Six Clinics Holding Corporation, II v. Cafcomp Systems, Incorporated*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted). A party seeking a preliminary injunction is "not required to prove his case in full . . . ." *Univ. of Texas v. Camenisch*, 451 U.S. 390, (1981). However, courts do require a "'reasonable certainty'" of success. *H. E. Fletcher Company v. Rock of Ages Corporation*, 326 F.2d 13, 17 (2d Cir. 1963) (quoting *Hall Signal Company v. General Ry. Signal Company*, 153 F. 907, 908 (2 Cir. 1907)).

Plaintiffs' Complaint seek declaratory relief regarding interpretation of easement language in a deed that governs the ability of Mountain Top to use trails on the Gerlach's property. Although the Complaint is separated into three separate Counts, each requires the court to interpret the same deed language. Plaintiffs' Reply Memorandum lays out eight requests for injunctive relief. As this structure clearly sets forth what Plaintiffs are requesting, the court will address the likelihood of success in this structure.

*a) Enjoining Defendants from taking any steps to discontinue any existing trail segments located on their property*

As noted, Plaintiff's Complaint requires the court's interpretation of easement language in a deed. Plaintiffs seek a declaration that the phrase "substantially similar access," as it is used in the Ski Trail Easement in the Supplemental Deed. Plaintiffs' Exhibit 3, filed 7/12/24, p. 15; Defendants' Exhibit B, filed 9/16/24, p. 15 means any relocated trails must be of a similar nature. Defendants argue "substantially similar access" simply means relocated trails with a similar entry.

If a term in an express easement has a clear meaning, a court "must enforce the [term] as written without resort to rules of construction or extrinsic evidence." *DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314 (quotation omitted). The Vermont Supreme Court recently reiterated how easements must be interpreted by the court:

> "The interpretation of an express easement is a question of law, which we review de novo." *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n,* 2015 VT 60, ¶ 56, 199 Vt. 313, 124 A.3d 454 (quotation omitted). "The touchstone for interpreting the scope of an express easement is the intent of the original parties to the easement." *MontChilly, Inc.,* 2020 VT 77, ¶ 23, 213 Vt. 175, 249 A.3d 646. We first "look to the language of the written instrument because it is assumed to declare the intent of the parties." *Kipp v. Chips Est.,* 169 Vt. 102, 105, 732 A.2d 127, 130 (1999). "[W]hen looking at particular language in a deed, the court must accept the plain meaning of the language ...." *Id.* at 107, 732 A.2d at 131; *see Simpson Dev. Corp. v. Herrmann,* 155 Vt. 332, 334-35, 583 A.2d 90, 92 (1990) (explaining that Court accepts plain, ordinary, and popular meaning of disputed contractual language). Language is unambiguous if reasonable people could not differ as to its interpretation. *See Sanville v. Town of Albany,* 2022 VT 22, ¶ 15, ⸺ Vt. ⸺, 279 A.3d 127. On the other hand, "[a]mbiguity exists if the extrinsic evidence, in combination with the writing, supports an interpretation that is different from that reached on the basis of the writing alone, and both are reasonable." *Main St. Landing, LLC v. Lake St. Ass'n,* 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.) (quotation omitted). If the term is unambiguous, the Court enforces it "as written without resort to rules of construction or extrinsic evidence." *DeGraff v. Burnett,* 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted).

*Gladchun v. Eramo,* 2023 VT 5, ¶ 12.

Plaintiffs assert that similar access should be understood "as a qualitative concept." Reply at 4. This broad definition preserves access for users of similar skill levels as existing trails, allows Mountain Top to use the same grooming equipment as it uses on existing trails, and enables guests and employees to access the same portions of the trail network as the existing trails. *Id.* Defendants argue there is no language in the easement requiring the replacement trails to meet the criteria laid out by Mountain Top. They restrict their interpretation to a reading of the word "access" that "[means] the ability to access other trails which the relocated trails permit . . . ." Opposition at 10.

The Vermont Supreme Court has made clear that a "dominant estate is entitled to use an easement 'in a manner that is reasonably necessary for the convenient enjoyment of the servitude'" and "may not 'be used in a way that materially increases the burden on the servient estate.'" *Post & Beam Equities Group, LLC v. Sunne Village Development Property Owners Association*, 2015 VT 60, ¶57, 199 Vt. 313 (quoting *Rowe v. Lavanway*, 2006 VT 47, ¶23, 180 Vt. 505).

In an earlier case interpreting an express right to relocate a right of way in a deed, the Vermont Supreme Court found that "the law requires the dimensions of this new way be reasonable, taking into account its purpose." *Holden v. Pilini*, 124 Vt. 166, 170 (1964). The *Holden* case concerned defendants' express right in a deed from a common grantor to relocate a right of way that the plaintiffs, who were neighbors, were using as a shared driveway. The deed required that the relocated right of way be "reasonably convenient." *Id.* at 168. The particular course of the driveway created a "tear-shaped island" that straddled the dividing line between the properties at a point where the road diverged and reconnected. *Id.* When defendants enlarged their garage in 1960, plaintiffs brought suit, claiming the addition encroached on the right of way. Since the parties were unable to agree on a new right of way that excluded the addition, the lower court determined a reasonable alternative, based in large part on its finding that plaintiffs' predecessors-in-title had acceded to defendants' addition on the condition that they reduce the size of their portion of the island to compensate for their encroachment. *Id.* at 171. Thus, *Holden* makes clear that a "requirement of reasonableness" is the overriding concern when assessing a relocated easement granted expressly in a deed. See *Id.* at 171.

Although not precedential, the court finds *Gronbach v. Millar*, 144 N.E.2d 307 (Ohio Ct. App. 1957), particularly informative when read in conjunction with *Holden*. In that case, a deed from a common grantor to two neighbors (plaintiff and defendant) reserved for the defendant a right to unilaterally change the location of an easement for a road on the defendant's property, as long as the plaintiff retained a "similar right of ingress and egress over the said new roadway." *Gronbach v. Millar*, 144 N.E.2d 307, 308 (Ohio Ct. App. 1957). The court rejected an attempt by the defendant to change the location of the easement, due to finding "the grade . . . excessively great, the curve too sharp, and the slope insufficient" on the replacement road. *Id.* at 309.

In view of the above cases and the credible testimony presented by Plaintiffs at the September hearing, Plaintiffs have demonstrated that they are likely to succeed on this component of their preliminary injunction. As things stand now, the court does not find the replacement trails reasonably adhere to the requirement of "substantially similar access" contained in the Supplemental Deed. In *Gronbach*, the maximum grade of the road the court found unreasonable was 17%. *Id.* Here, the replacement trail offered by the Gerlachs has a gradient between 10% and 20%. Along with being too narrow for skiers to pass abreast and for Mountain Top to use their regular grooming equipment, the replacement trails contain abrupt terrain changes and has extremely steep inclines. Precedent makes clear that "access" hews much more closely to Mountain Top's broad definition than the Gerlachs' narrow one, meaning the concept includes more than the ability to simply enter the same network of trails. As such, Mountain Top's loss of access to a place for skiers of similar skill levels, ability to use their grooming equipment, and access to other trails must be considered. In light of these factors, Mountain Top has demonstrated they are likely to succeed on the merits of this issue.

> *b) Enjoining Defendants from taking any steps to prevent all guests and invitees of Mountain Top from making full use of the existing trails in accordance with the resort's deeded easement rights*

Defendants argue that the "'Intent of the easement was for guests and invites of the inn.'" Opposition at 5. Plaintiffs respond that they are "asking the court from (sic) enjoining the Gerlachs from…unreasonably [interfering] with the lawful use of the existing trails." Reply at 6.

Taking into consideration the more holistic concept of access delineated by the Vermont Supreme Court and mirrored in other courts, Plaintiffs have also demonstrated a likelihood of success on this aspect of their injunction. As noted above, precedent supports a reading of the term that encompasses access to trails appropriate for skiers of certain skill levels, the ability to groom trails, and the ability to reach other

trails connected to the resort's network. These features speak to an idea of access that seeks to preserve the full experience created for a grantee and their guests or invitees by a granted easement, not simply the physical ability to enter a property in some specified location. *Post & Beam Equities Group*, 2015 VT 60, ¶57; *Holden*, 124 Vt. 166, 170; see also *McCormick v. LaChance*, 32 A.3d 1037, 1041 (ME 2011) (when servient estate owner possesses unilateral relocation right, relocation must not significantly lessen the utility of the easement or frustrate purpose for which it was created); *Gronbach*, 144 N.E.2d at 309. Because the scope of permitted users plays a part in the original purpose of the easement and the grantee's ability to utilize the easement according to those purposes, it falls within the concept of access. As such, the court would likely find that similar access included use by the same scope of Mountain Top's guests and invitees that had used the existing trails, and Plaintiffs have demonstrated a likelihood of success on this aspect of the request for relief.

> *c) Enjoining Defendants from taking any steps to restrict lawful access onto, or off, the existing trails on their property at any point along their length*

The plaintiffs have not demonstrated a likelihood of success on this issue because the court cannot determine whether the Interfield Trail is within 30 feet of the Gerlach property line based on the evidence presented at the hearing. The location of a boundary line "on the ground is a question of fact to be determined on the evidence." *Pareira v. Wehner*, 133 Vt. 74, 77 (1974). Although the maps attached to Plaintiffs' Exhibit 5 are the most accurate representation of the new and existing tails presented to the court, they explicitly state that they are not a boundary survey. Thus, the court makes no ruling on whether the easement permits access onto the trails at points where they overlap with the Gerlach property because the court does not have sufficient evidence to determine the extent of this overlap, or whether it exists at all. Plaintiffs' have not met their burden for preliminary injunctive relief on this request.

> *d) Enjoining Defendants from taking steps interfering with Plaintiffs' continuing efforts to reasonably maintain the trails located on Defendants' land*

The plaintiffs have demonstrated a likelihood of success on their request for an injunction against interference with trail maintenance based on evidence presented at the September hearing. Most importantly, the court finds that a plain reading of the language of the Supplemental Deed gives Mountain Top the right to reasonably maintain the trails under the easement. *DeGraff*, 2007 VT 95, ¶ 20. The phrase "Included herewith are rights to maintain the trails (including pruning tree limbs and cutting brush, and grooming trails in the wintertime)" admits no other possible reading. Plaintiffs' Exhibit 3, filed 7/12/24, p. 15; Defendants' Exhibit B, filed 9/16/24, p. 15. This list of included tasks strikes the court as clearly illustrative, not an exclusive list of Mountain Top's permitted grooming rights.

Further, a review of applicable precedent shows an intent to balance unilateral easement relocation rights with conditions of reasonableness and attention to the original purpose and intent of the easement. *Post & Beam Equities Group*, 2015 VT 60, ¶ 57; *Holden*, 124 Vt. 166, 170; see also *McCormick,* 32 A.3d 1037, 1041 (2011); *Gronbach*, 144 N.E.2d 307, 309. At the hearing, members of Mountain Top's staff credibly testified that they have used the same type of grooming machine since the easement was created in 1996, and that the machine measures twelve and one-half feet in length (which is within the 30 feet provided by the easement). Given these facts, it strains credulity to imagine that the original grantor gave Mountain Top grooming rights and specifically excepted grooming equipment from the prohibition on motorized vehicles, but did not intend for them to use industry standard equipment to accomplish this task.

Finally, interfering with Mountain Top's ability to adequately groom trails directly affects the safety and experience of guests and employees. This could exacerbate the potential irreparable harm that

Mountain Top has already demonstrated could occur in the absence of an injunction. Thus, the court finds they are likely to succeed on this aspect of their injunction.

*e) Enjoining Defendants from taking any steps interfering with Mountain Top's continuing efforts to post signage and to take other appropriate steps designed to reasonably protect the safety of trail users*

Based on the conclusions above, Plaintiffs have shown a likelihood of success on this aspect of their request for relief. A plain reading of the Supplemental Deed clearly grants Mountain Top the right to use the existing trails for the activities outlined in the Ski Trail Easement, including cross-country skiing. Part and parcel of the use and maintenance of the trail is making sure they are clearly marked for the benefit of both the users and the Gerlachs. Clearing potentially dangerous debris and ensuring proper signage is posted on trails are basic requirements of ensuring the safety of all users. Thus, Mountain Top's rights under the easement include taking these steps on the existing trails until suitable replacements can be found. Plaintiffs have shown a likelihood of success on this aspect of their injunction.

*f) Enjoining Defendants, their agents, guests and invitees from operating motorized vehicles on the trails*

To prevail on this aspect of their request for injunctive relief, Plaintiffs would need to rebut the traditional view that an easement primarily affects the rights and duties of the dominant estate, and show that Defendants' use of motorized vehicles would interfere with Mountain Top's use of the easement.

As the Second Circuit noted: "Although no affirmative duty is imposed on the servient owner [by an easement], there is a passive duty that it not interfere with the dominant owner's exercise of its easement rights." *Sutera v. Go Jokir, Inc.*, 86 F.3d 298 (2d Cir. 1996); See Restatement (Third) of Property (Servitudes) §4.9 (2000).

At this juncture, Mountain Top's likelihood of success on this issue is low. The court does not find a single reference restricting use of motorized vehicles "*in connection* with relocation or maintenance of the trails" explicit enough to overturn traditional presumptions around the application of easements (emphasis added). Plaintiffs' Exhibit 3, filed 7/12/24, p. 15; Defendants' Exhibit B, filed 9/16/24, p. 15. Although Plaintiffs correctly interpret the Restatement and the caselaw in Vermont and the Second Circuit, they have not presented evidence sufficient to establish that the Gerlachs' use of motorized vehicles would interfere with Mountain Top's use of the easement. Plaintiffs argue in their Reply that they "cannot provide a safe trail network to guests and invitees if the Gerlachs have an unfettered right to travel along the relatively narrow trails on snowmobiles or all-terrain vehicles." Reply, filed 9/20/24, p.9. Putting aside the fact that the court is not clear on whether the Reply refers to all trails in the network or simply the replacement trails, Plaintiffs have not presented sufficient evidence of this aspect of the request for injunctive relief. Without more substantive support for the idea that the Gerlachs' use of motorized vehicles adversely impacts the ability of the resort's guests, invitees, and employees to use the trails, this breach of duty remains hypothetical as opposed to likely. Thus, the Plaintiffs have not shown a likelihood of success on this aspect of their request for relief.

*The Public Interest*

The Supreme Court has long held that "courts ... should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). If "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant . . . ." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). In a case concerning a petition by an environmental group to enjoin timber sales in

Montana, the 9th Circuit determined that the "effect on the health of the local economy" represents a valid consideration when considering the effect of an injunction on the public interest. *All. for the Wild Rockies*, 632 F.3d 1127, 1138 (9th Cir. (2011)). The state of Vermont has a long history of supporting winter sports, in part, because it benefits the state economically. In an early determination regarding whether structures built as part of the Killington Resort were subject to taxation by the town of Sherburne, the state Supreme Court noted that investment in the resort "has been actively encouraged by the state to add to the economic growth of the area, and to Vermont generally." *Sherburne Corporation v. Town of Sherburne*, 124 Vt. 481, 481–482 (1965). The perpetuation of this policy can be seen in the legislature's 2011 decision to make "skiing and snowboarding" the official winter sports of the state. 1 V.S.A. §516.

Plaintiffs assert that the public interest supports an injunction in this case because they seek to maintain the "*status quo ante* regarding use and maintenance of the trails." Reply at 5. The court agrees the public interest clearly militates in favor of an injunction. To deny an injunction at this stage would impact the public's ability to enjoy outdoor recreation and upset the expectations of those who may have already made decisions around their winter accommodations. These considerations clearly affect the health of the local economy of Chittenden, where the resort is located. Additionally, to deny an injunction before the merits of the case have been heard would be contrary to Vermont's long-standing policy of support for skiing as an economically and culturally beneficial winter activity. Thus, the court finds that the public interest supports issuance of an injunction in this instance.

## Conclusion

In weighing these factors, the court concludes Plaintiffs have met their burden for a preliminary injunction. The court grants Plaintiffs' motion for a preliminary injunction in part and denies the motion in part. The court grants Plaintiffs' motion with respect to parts *a, b, d*, and *e* and denies the motion with respect to parts *c* and *f*.

## Order

1. Defendants are hereby enjoined from taking any steps to discontinue the Interfield Trail, the Deer Run Trail, or any other existing trail segments located on their property.
2. Defendants are hereby enjoined from taking any steps to prevent all guests and invitees of Mountain Top from making full use of the existing trails, including the Interfield Trial and the Deer Run Trail, in accordance with the resort's deeded easement rights.
3. Defendants are hereby enjoined from taking steps to interfere with Plaintiffs' efforts to reasonably maintain the existing trails on Defendants' land.
4. Defendants are hereby enjoined from taking any steps to interfere with Plaintiffs' efforts to post signage and other appropriate steps designed to reasonably protect the safety of trail users.
5. This injunction is preliminary and shall remain in effect until further order of the court.

Electronically signed on October 25, 2024 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*

_____
Alexander N. Burke
Superior Court Judge